Timothy A. Scott (SBN 215074)
E: TScott@McKenzieScott.com
Marcus S. Bourassa (SBN 316125)
E: MBourassa@McKenzieScott.com
Brett T. Diehl (SBN 339686)
E: BDiehl@McKenzieScott.com
McKENZIE SCOTT, PC
1350 Columbia Street, Suite 600
San Diego, California 92101
Telephone: (619) 794-0451
Facsimile: (619) 202-7461

Attorneys for Defendant
Carlos Manuel Da Silva Santos

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

### (HONORABLE ROBERT S. HUIE)

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　Plaintiff,<br><br>vs.<br><br>CARLOS MANUEL DA SILVA SANTOS (1),<br><br>　　　Defendant. | Case No.: 3:23-cr-02507-RSH<br><br>**MR. SANTOS'S REPLY TO THE GOVERNMENT'S OPPOSITION TO HIS APPEAL OF THE MAGISTRATE JUDGE'S DETENTION ORDER**<br><br>Date: September 20, 2024<br>Time: 1:30 PM<br>Courtroom: 3B |

Under the Bail Reform Act, Mr. Santos is presumed to be released on his own recognizance or via an unsecured appearance bond unless the Court determines conditions of release are necessary or that no conditions can offer reasonable assurances he would reappear to defend this matter. 18 U.S.C. § 3142(b). The evidence the prosecution proffers to the Court of Mr. Santos's risk of flight falls short of meeting its burden.

## I. THE GOVERNMENT FAILS TO PROVE MR. SANTOS'S FINANCIAL ABILITY TO FLEE AND THAT MR. SANTOS COULD NOT BE EXTRADITED.

Even though Mr. Santos has no prior arrests, convictions, or failures to appear, the prosecution argues that "[i]f any person in this district needs to be detained as a flight risk, it is Defendant." ECF No. 63 (hereinafter "Government's Opposition Brief") at 2. In making this argument, the prosecution emphasizes the alleged loss amount of $100 million. *Id*. Despite having been detained for ten months, Mr. Santos has not received documents that validate this alleged figure.

More broadly, the government's argument that "the incentives to flee are growing" as more alleged victims come forward overly emphasizes alleged loss and restitution amount while failing to address Mr. Santos's financial situation. Government's Opposition Brief at 3. The Government alleges losses were induced by a Ponzi scheme in which victim funds were given to other victims, but such losses have no bearing on Mr. Santos's personal ability to flee or his financial means. Whether conditions of release would "reasonably assure" Mr. Santos's appearance requires a focus on Mr. Santos's own financial situation. 18 U.S.C. § 3142(e).

As one court has emphasized, "[i]n economic fraud cases, it is particularly important that the government proffer more than the fact of a serious economic crime that generated great sums of ill-gotten gains." *U.S. v. Giordano* 370 F.Supp.2d 1256, 1264 (S.D. Fla. 2005). For the government to carry their burden to prove by "a clear preponderance of the evidence" that Mr. Santos poses a flight risk, *United States v. Townsend*, 897 F.2d 989, 994 (9th Cir. 1990), alleged loss amount should not be substituted for actual proof of Mr. Santos's financial situation. In the face of a detailed forensic-account declaration, substantive treaty history, and the presumption of innocence, the prosecution responds with unsupported claims about personal wealth and concern about the risk of a hypothetical extradition. But the

relaxed evidentiary rules of a bail determination do not permit reliance on mere conjecture.

### A. The Government Has Not Offered Any Evidence That Mr. Santos Has Hidden Funds Because There Are None.

The defense has offered affirmative evidence that, as Mr. Santos has struggled through ten months in detention, he has desperately depended on his family to finance his defense. He waited until his parents were able to secure a $250,000 windfall from a long-held investment before bringing this bond appeal so that they could offer those funds as a cash bond. In response, the Government cannot point to any contrary evidence of personal wealth from its "[f]inancial tracing" and years-long investigation of the alleged financial crimes. Government's Opposition Brief at 6. Despite their prolonged, detailed investigation, the prosecution cannot point to any location or account where they believe Mr. Santos may have hidden funds.

Instead, the prosecution places great weight on a single statement Mr. Santos made last year to a Pretrial Services Officer about $100 million. Government Response at 15. That cherry-picked line item on the Pretrial Services Report cannot bear the weight placed upon it. First, it simply was not a declaration of liquid wealth. Rather, it was Mr. Santos's estimated valuation of the business he led, Ethos Asset Management ("Ethos"), at the time of his arrest. *See* Pretrial Services Report, ECF No. 51 at 3 (listing "Business – Ethos Asset Management" at $100,000,000.00). Second, the government is anticipated to present evidence at trial that Mr. Santos received bank statements that listed tens of millions of dollars in Ethos's brokerage accounts without Mr. Santos knowing those statements were false. Given Ethos's accounts receivable and the fraud perpetrated upon Mr. Santos, Mr. Santos's valuation of the company nearly a year ago appears reasonable.

Plainly, neither Mr. Santos, nor any expert, would value the company that way now. The company is under indictment, its accounts are frozen, its debtors have stopped paying, and the fraud committed against Mr. Santos has been unveiled. Since Mr. Santos's arrest, Ethos has ceased to operate in any meaningful capacity. Santos's valuation of his corporation upon his arrest was a declaration of personal wealth and has no bearing on the risk of flight here.

The Court should give no weight to the prosecution's attempt to argue otherwise, especially in the face of compelling evidence and forensic accounting that demonstrates he has no personal wealth with which to flee and live a life on the run.

### B. Mr. Santos Does Not Have the Means or Logistical Ability to Flee, Live a Life on the Run, and Escape Extradition.

Mr. Santos and his defense team expended significant time, money, and effort to reconstruct forensically the bank accounts of Mr. Santos and Ethos. Joshua Teeple's declaration makes clear that, in his professional judgment, there is no indication of significant personal enrichment by Mr. Santos or his family. The Government argues Mr. Santos will flee, but would it be worth imposing financial calamity on his parents and risking a far greater sentence if he is later convicted here? Where would he go? How would he live? Without independent funds, Mr. Santos's ability to flee is de minimis. *See U.S. v. Sabhnani*, 493 F.3d 63, 77 (2d Cir. 2007) ("the deterrent effect of a bond is necessarily a function of the totality of a defendant's assets").

The government claims in a footnote that Mr. Santos could live in Portugal without fear of extradition. The prosecution does not, however, cite a valid legal authority or declaration for this proposition.

If Mr. Santos were to flee to Portugal, he would be subject to extradition. In *Hilario v. U.S.*, Judge Reena Raggi explored the two countries' Extradition Convention of 1908 and that treaty's citizen exception clause (Article VIII) before

concluding that "nothing in the language prohibits either sovereign from exercising discretion to extradite nationals consistent with its own domestic laws and policies." 854 F.Supp. 165, 170 (E.D.N.Y. 1994). Subsequently, the Instrument Amending the Convention of May 7, 1908 Between the United States of America and Portugal, signed on July 14, 2005, deepened the bilateral relationship to align with the European Union's requirements. 35 Stat. 2071, 11 Bevans 314; *see also* Fact Sheet, Off. Spokesman, U.S. Dep't St., U.S.-Portugal Agreements on Extradition and Mutual Legal Assistance (July 14, 2005), https://2001-2009.state.gov/r/pa/prs/ps/2005/49632.htm (outlining the 2005 Instrument's modifications of the 1908 bilateral treaty).

Even if extradition is limited to terrorism and international organized crime offenses, the latter category is defined broadly by the international and European community and encompasses the crimes with which Mr. Santos and his alleged co-conspirators are charged. *See* U.N. Off. Drugs & Crime, U.N. Convention Against Transnational Organized Crime, at 5 (2004) (defining "organized criminal group" as "a structured group of three or more persons, existing for a period of time and acting in concert with the aim of committing one or more serious crimes or offences established in accordance with this Convention, in order to obtain, directly or indirectly, a financial or other material benefit"); European Council Framework Decision 2008/841/JHA, 2008 O.J. (L 300) 42 ("'criminal organisation' means a structured association, established over a period of time, of more than two persons acting in concert with a view to committing offences which are punishable by deprivation of liberty or a detention order of a maximum of at least four years or a more serious penalty, to obtain, directly or indirectly, a financial or other material benefit").

As Mr. Santos is not a citizen of any other country besides Portugal, he would similarly face extradition in nearly every other nation. He is not a high-profile prisoner who, in the unlikely situation he successfully navigated across land and

sea, would be taken in by one of the few countries eager to capitalize on fugitives' celebrity for political gain. His lack of financial assets would render him alone, constantly on the run, and facing a miserable life separated from his family forever. Although this is a serious case, it is hardly so serious that a destitute life on the run holds appeal.

## II.   EVIDENCE OFFERED OF MR. SANTOS'S GUILT LACKS CONTEXT.

The government's response to Mr. Santos's bond motion presents select evidence without sufficient context. Doing so deprives the Court of important details necessary for its evaluation of the weight of the evidence under the BRA.

### C. The Queen's Letter Was Never Sent to Anyone.

The government argues that "Defendant was preparing to induce investments with a 'Top Secret' 'Authorization Letter' from 'The Committee of 300' of the World Bank" and attaches two letters before quipping that "Queen Elizabeth II passed of natural causes before the Government was able to confirm her signature on this document, but the authenticity of this entire document is suspect to say the least." Government's Opposition Brief at 9-11.

The government's argument omits the key detail: Mr. Santos never sent these documents to anyone. In reviewing the discovery in this case, the only email that defense counsel has been able to find that has a Committee of 300 document attached is an email Mr. Santos evidently sent to himself from carlos_santos94@hotmail.com to csantos@iseg.ulisboa.pt. Notably, these Committee of 300 documents were provided to the government by his bitter ex-girlfriend. There is no evidence that Mr. Santos himself viewed the Committee of 300 as anything more than a joke.

### D. The IsBank Account Details Have Long Been Within the Government's Possession.

The government asserts that the 12 Turkiye Bankasi ("IsBank") accounts reviewed by the forensic accountant "are accounts of which the Government was unaware until Defendant filed his motion." Government's Opposition Brief at 14. However, bank statements from these accounts can be found in Mr. Santos's carlos@ethosasset.com email account, the contents of which the government obtained last year.

Searching through the carlos@ethosasset.com email archive, defense counsel found bank statements for the IsBank accounts listed in Mr. Teeple's declaration. The government has these same emails. Their apparent failure to identify the accounts previously should not be held against Mr. Santos. If anything, Mr. Santos's forthcomingness about these bank accounts demonstrates his transparency and trustworthiness.

### E. Mr. Santos Contests the Government's Representations About Ethos's Business Model and the Allegedly False Documents.

The Government's Opposition Brief handpicks messages between Mr. Santos and his alleged co-conspirator. At trial, Mr. Santos plans to contest the context and meaning of these messages. The Government's Opposition Brief also includes a fraudulent bank statement that they contend Mr. Santos created and sent but which could have been modified and sent by any number of other individuals working at Ethos. Mr. Santos recognizes that these documents are fake; at trial he intends to contest that he was involved with or aware that such fake documents were being transmitted. Accordingly, even as the least important factor under the BRA, the prosecution's arguments regarding the weight of the evidence here should be met with skepticism by the Court.

### F. INHCAM Advisory Was Led by An Experienced Investment Banker and Is Not Specifically Part of Charged Crimes.

The Government's Opposition Brief leaves out important context about IHNCAM Advisory. IHNCAM Advisory's lead founder was Ana Rocha-Homem, an experienced Portuguese businesswoman. As she told government investigators, Ms. Rocha-Homem was introduced to Mr. Santos by Muradali Ibrahimo, Mr. Santos's professor at the Lisbon School of Economics & Management. Ms. Rocha-Homem was a Director at CaixaBI investment bank from 1999 through 2016. Ana Rocha-Homem, LINKEDIN, https://www.linkedin.com/in/ana-rocha-homem-b1451040/ (last visited Sept. 17, 2024). Thereafter, she founded IHNCAM Advisory. The graphics excerpted at pages 12 and 13 of the Government's Opposition Brief could well have incorporated investments Ms. Rocha-Homem made during her long career at CaixaBI.

Notably, the Superseding Indictment's allegations and overt acts make no mention of INHCAM Advisory.[1] Therefore, Mr. Santos does not know how, if at all, the government thinks these specific presentation slides implicate his guilt.

Since they barely implicate, if at all, what is already the least important factor (the weight of the evidence), the Court's BRA analysis should thus give these messages and documents no weight.

### III. THE ALLEGATIONS REGARDING ALLEGED CO-CONSPIRATORS LACK SUFFICIENT SPECIFICITY.

### A. Mr. Santos Does Not Know the Identity of All of His Indicted Co-Conspirators and Is Confused How They Are Avoiding Arrest.

The government's opposition asserts that Mr. Santos's "indicted co-conspirators are on the lam." Government's Opposition Brief at 2. To Mr. Santos's

---

[1] A bank account under IHNC Advisory is listed in the forfeiture allegations at paragraph 37(f) of the Superseding Indictment, ECF No. 29.

knowledge, per the current indictment, there is only one indicted co-conspirator, Elias Achilleos. *See* Superseding Indictment, ECF No. 29. Mr. Santos was unaware prior to the filing of the Government's Opposition Brief that additional individuals are under indictment. He still does not know their identity.

As to Mr. Achilleos, based on Mr. Santos's defense team's own research and communications with government counsel, it seems widely known that Mr. Achilleos is in the United Kingdom. Mr. Santos is not aware of any attempts by Mr. Achilleos to avoid arrest in his home country. The mere fact the government has not yet taken steps to arrest Mr. Achilleos hardly reflects a risk of flight.

Therefore, Mr. Santos is not aware of the basis upon which the government asserts his indicted co-conspirators are seeking to flee justice. In any event, the conduct of others has no bearing on whether Mr. Santos would flee subject to onerous bond conditions.

### B. Mr. Santos Does Not Control Ethos's Brazilian Accounts.

Ethos's Brazilian subsidiary, Ethos Capital Brasil Ltda., was controlled by Mayra Couto, a Brazilian national. Ms. Couto has a pending lawsuit seeking to claim control of Ethos. *See* Ex. A (proof of ongoing lawsuit filed by Ms. Couto against Ethos). There is no reason to believe that Mr. Santos would have access to or control over funds in Ethos Capital Brasil Ltda.'s accounts and the government does not offer any evidence to support its assertions. Therefore, the government's attacks on Mr. Teeple's declaration lack merit.

### IV. MR. SANTOS SHOULD BE COMPARED TO THE BROAD BASE OF FEDERAL DEFENDANTS FACING FRAUD CHARGES.

The Government Opposition Brief's final argument resorts to speculation. The prosecution writes that "[i]t looks as if Defendant has befriended Leonard Glenn Francis," before admitting it "has no information on the conversations that may have occurred between Francis and Defendant." Government's Opposition

Brief at 16. In other words, the prosecution's arguments that Mr. Santos has learned from Mr. Francis how to flee via Mexico appear calculated only to raise the specter of flight as conjured through the facts of Mr. Francis's case, a case very different than the one before the Court. The Government's speculative detention-by-association has no place in the Court's consideration of bond for this defendant in this case.

A more appropriate comparison is to the broad class of federal defendants charged with fraud offenses. According to the Department of Justice's own data capturing federal pretrial detention rates nationwide by charge type, individuals facing fraud charges are the most frequently released on bond. George E. Browne & Suzanne M. Strong, *Pretrial Release and Misconduct in Federal District Courts, Fiscal Years 2011–2018* 2, U.S. Dep't of Just., Off. Just. Programs NCJ 252837 (2022), https://bjs.ojp.gov/content/pub/pdf/prmfdcfy1118.pdf.

For any defendant released on bond, flight is theoretically possible. However, because economic harms are different than other types of harms, courts understand fraud defendants typically pose a lower risk than other categories of defendants. Mr. Santos has no prior arrests, is not alleged to pose a danger to the community, would not risk financial calamity for his family, and has every reason to reappear to aggressively defend this case.

A mere invocation of another unrelated defendant's past flight does not demonstrate Mr. Santos poses a unique flight risk among federal fraud defendants.

## V.  CONCLUSION

The BRA's factors favor release of Mr. Santos. For the reasons articulated in this reply and Mr. Santos's original Appeal of the Magistrate Judge's Detention Order, conditions for release should be set.

Respectfully submitted,

Dated: September 17, 2024

**McKENZIE SCOTT, PC**
*s/Brett T. Diehl & Marcus S. Bourassa*
BRETT T. DIEHL
MARCUS S. BOURASSA
TIMOTHY A. SCOTT
Attorneys for Defendant
Carlos Manuel Da Silva Santos