TARA K. McGRATH
United States Attorney
E. CHRISTOPHER BEELER
California Bar No.: 330496
New York Bar No.: 5422068
CARL F. BROOKER, IV.
Washington DC Bar No.: 1022908
Assistant United States Attorneys
Office of the U.S. Attorney
880 Front Street, Room 6293
San Diego, CA 92101
Tel: (619) 546-7748
Fax: (619) 546-0510
Email: christopher.beeler@usdoj.gov
carl.brooker@usdoj.gov

Attorneys for the United States

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

UNITED STATES OF AMERICA,

Plaintiff,

v.

CARLOS MANUEL DA SILVA SANTOS et al.,

Defendants.

Case No.: 23-CR-2507-RSH

**THE UNITED STATES OF AMERICA'S OPPOSITION TO DEFENDANT'S MOTION FOR A BILL OF PARTICULARS AND FOR AN ORDER DIRECTING NOTICE UNDER FED. R. CRIM. P. 12(b)(4)(B)**

## INTRODUCTION

Defendant is charged with operating a fraudulent advance fee loan scam, primarily fueled by his creation and use of fake and misleading financial documents to induce victims to depart with money. Regrettably, Defendant's motion charts a similar course by misapplying case law, often equivocating or quoting law out of context. This Court should give Defendant's motion short shrift.

In seeking a bill of particulars and relief under Federal Rule of Criminal Procedure 12(b)(4)(B), Defendant seeks one thing: a list of the specific companies and individuals that will be part of the government's case in chief. Stated simply, Defendant demands the

government's witness and exhibit list. But this request is an improper use of a bill of particulars and Rule 12(b)(4)(B). Here, the motion for a bill of particulars is untimely, unnecessary due to full discovery, weaponizes the law in a way courts soundly reject, and pointless because the superseding indictment sufficiently advises Defendant of the charges he faces. This Court should also deny relief under Rule 12(b)(4)(B) because Defendant contorts the rule and ignores—indeed misapplies—caselaw that discards the idea that the rule requires production of the government's entire witness and exhibit list. Rather, the rule applies to notice of evidence potentially subject to a suppression motion, and in this case, the government has provided such notice.

## BACKGROUND

### I. Relevant Procedural Background

On November 10, 2023, United States Magistrate Judge Barbara L. Major signed a complaint charging Defendant with wire fraud conspiracy and issued an arrest warrant. ECF 1. On November 12, 2023, federal agents from Homeland Security Investigations (HSI) arrested Defendant in Newark, New Jersey when he arrived on an international flight from Istanbul, Turkey. He has been in custody since.

On December 7, 2023, a grand jury returned a seven-count indictment charging Defendant and his company Ethos Asset Management, Inc. (Ethos) with one count of wire fraud conspiracy in violation of Title 18, United States Code, Section 1349, three counts of wire fraud in violation of Title 18, United States Code, Section 1343, one count of bank fraud in violation of Title 18, United States Code, Section 1344, and two counts of aggravated identity theft in violation of Title 18, United States Code, Section 1028A. ECF 7.

On December 13, 2023, Defendant made his initial appearance and was arraigned on the indictment. *Id.* 11. At that time, Jeremy Warren noticed his appearance as Defendant's retained counsel. On December 19, 2023, the court ordered Defendant detained pending trial. *Id.* 17, 21.

On March 28, 2024, a grand jury returned an eight-count superseding indictment (SI). ECF 29. The SI charged Defendant, Ethos, and Elias Achilleos with wire fraud conspiracy, re-charged Defendant and Ethos with materially identical counts of wire fraud, bank fraud, and aggravated identity theft that were charged in the indictment, and charged Defendant, Ethos, and AssetVest Corp with conspiracy to operate an unlicensed money transmission business in violation of Title 18, United States Code, Sections 371 and 1960. *Id.* ¶¶ 32-34(a)-(d), 35(a)-(g). On April 3, 2024, the court held Defendant's arraignment on the SI. ECF 35.

On May 10, 2024, Defendant changed counsel and retained Timothy Scott, Marcus S. Bourassa, and Brett T. Diehl of the law firm McKenzie Scott PC. ECF 39, 41, 52. On August 30, 2024, Defendant filed a "Motion for Bill of Particulars and for an Order Directing the Government to Provide Notice Under Fed. R. Crim. P. 12(b)(4)(B)." ECF 55.

## II. <u>Charges and Conduct Alleged in the Superseding Indictment</u>

In 37 paragraphs across nine pages, Count 1 of the SI particularizes an advance-fee fraud conspiracy that started on at least November 6, 2019, when Defendant opened a bank account at Wells Fargo in San Diego, California, *see* ECF 29 ¶ 25(k), and ended on November 12, 2023, the date of Defendant's arrest. *Id.* ¶¶ 1-25(a)-(l).

Defendant, a citizen of Portugal, was the Chief Executive Officer of Ethos, a San Diego-based corporation. *Id.* ¶ 1-3. The SI alleges that Defendant and Elias Achilleos promoted Ethos "as a 'Full-service Project Financing' company that offer[ed] loans to companies in exchange for an upfront fee." *Id.* ¶ 15. Defendant caused borrowers to transmit the upfront fee, which typically totaled "an amount equal to a percentage of the total loan value," to an account owned and controlled by Ethos and Defendant in one of three ways. *Id.* First, Defendant might cause a borrower to deposit the upfront fee into a securities account, obtain a margin loan on the invested securities, and transmit the money from the margin loan to an Ethos bank account. *Id.* Second, Defendant might cause a borrower to obtain a standby letter of credit in the amount of the upfront fee from the

borrower's bank and allow Ethos to obtain money through a margin loan collateralized by the standby letter of credit. ECF 29 ¶ 15. Third, Defendant might cause a borrower to transmit the upfront fee directly into an Ethos bank account, *id.*, which is what occurred in Count 4 of the SI. *Id.* ¶ 27.

Defendant and his co-conspirators told prospective borrowers that they "used the upfront fee to invest in brokerage accounts controlled by [a] proprietary algorithm," *id.* ¶ 16. But that was false. *Id.* There was no proprietary algorithm and Defendant used the upfront fees to enrich himself and to "pay back other borrowers." *Id.*

To induce prospective borrowers to depart with their money in the form of the upfront fee, Defendant and others engaged in a multi-front effort to perpetuate the illegal scheme. First, Defendant and others made materially false and deceptive representations including, but not limited to, Ethos's history of successfully funding loans, the capital available to Ethos to fund loans, and the use of the upfront fees. ECF 29 ¶¶ 17-18. For example, the SI alleges that Defendant and others made false documents, "such as forged bank account statements, altered brokerage account statements, and fake annual financial statements for Ethos to make it appear that [Ethos] had hundreds of millions of dollars deposited, invested, or otherwise available to fund loans. *Id.* ¶ 20. The SI further alleges specific overt acts through which Defendant and others prepared and sent prospective borrowers false financial documents that inflated Ethos's net worth. These were:

- A July 24, 2021 WhatsApp message thread in which Defendant and Elias Achilleos discuss how to present to prospective borrowers a fake $100,304,447.46 bank account statement from Citibank. *Id.* ¶ 25(c).
- An August 9, 2021 email from Defendant to Victim 1 that included as an attachment the fake $100,304,447.46 bank account statement from Citibank, inducing Victim 1 to pay a $650,000 upfront fee. *Id.* ¶ 25(d).
- A March 29, 2021 email from a co-conspirator to Victim 2 that included a March 25, 2021 bank statement fraudulently showing a $495,799,652.23

balance in an Ethos account at Wells Fargo, causing Victim 2 to extend Ethos a $650,000 upfront fee. *Id*. ¶ 25(e)-(f).

- A June 30, 2022 WhatsApp message thread between Defendant and Elias Achilleos in which Elias Achilleos agreed to review fraudulently altered bank statements sent to him by Defendant. *Id.* ¶ 25(l).
- A May 11, 2023 email from Defendant to Victim 3 that included an Ethos 2022 financial statement falsely stating it was prepared and signed by a San Diego bookkeeping company and that Ethos had $2.2 billion in assets. ECF 29 ¶ 25(g)
- A May 11, 2023 email from Defendant to Victim 3 that included a brokerage account statement with a non-existent account number and falsely stating that Ethos had $359,001,009.01 in a trading account. *Id.* ¶ (h).

Second, Defendant enlisted Sean Winston to give deceptive representations to prospective borrowers about the business relationship between Defendant/Ethos and Atlas Capital Management LLC (Atlas Capital) in order to induce prospective borrowers to pay the upfront fee. *Id.* ¶ 22. Specifically, the SI alleges that on April 12, 2021, Defendant emailed Sean Winston to give direction to what he should tell prospective borrowers. *Id*. ¶ 25(a). Ten days later, on or about April 22, 2021, Sean Winston participated in a recorded video meeting with prospective borrowers and an un-indicted co-conspirator during which Sean Winston told prospective borrowers that Atlas Capital and Ethos had successfully financed over $1 billion worth of projects, when in fact that had never occurred. *Id*. ¶ 25(b).

Third, Defendant fraudulently obtained lines of credit from financial institutions. *Id*. ¶ 21. Specifically, on October 22, 2022, Defendant emailed fake documents to U.S. Financial Institution 1 to obtain a $14.8 million line of credit. ECF 29 ¶ 25(i).

Finally, Defendant and Elias Achilleos agreed to further the wire fraud conspiracy by causing victim-borrowers to litigate with Ethos, thereby giving Ethos an excuse to “delay” payment of the loans and ultimately to “pay borrowers less than agreed.” *Id.* 24.

Specifically, the SI alleges Defendant and Elias Achilleos discussed this part of the plan on or about June 29, 2020. *Id.* Moreover, the SI alleges that Ethos caused an attorney to "authenticate under oath a false balance sheet and file it in" federal court in a civil action brought by an Ethos borrower. *Id.* ¶ 25(j).

Counts 2-4 of the SI charge Defendant and Ethos with three counts of wire fraud related to interstate wires sent on August 12, 2021, September 10, 2021, and May 18, 2023. *Id.* ¶¶ 26-27. As made obvious in the SI, the factual predicate of these charges relates to the false statements described in Paragraphs 25(d) through (h).

Count 5 of the SI charges Defendant and Ethos with bank fraud against U.S. Financial Institution 1 for conduct occurring between October 22, 2022 and July 25, 2023. Notably, the starting date for the bank fraud corresponds to Paragraph 25(i) in which the SI alleges Defendant sent fake documents to U.S. Financial Institution 1 to obtain a $14.8 million line of credit. In addition, this bank fraud count relates to Paragraph 31 in which the SI alleges that on May 11, 2023, Defendant forged the signature of person known as C.T. and sent it to U.S. Financial Institution 1.

Counts 6 and 7 charge Defendant with aggravated identity theft in relation to conspiracy to commit wire fraud, wire fraud, and bank fraud. ECF 29 ¶ 30-31. Specifically, Counts 6 and 7 allege that on May 11, 2023 Defendant forged the signature of Victim C.T. and sent it to U.S. Financial Institution 1 and Victim 3. *Id.*

Count 8 charges Defendant Santos, Ethos, and AssetVest Corp with conspiring to operate an unlicensed money transmission business in violation of Title 18, United States Code, Sections 371 and 1960. *Id*. ¶¶ 32-35(a)-(g). The SI explains that Defendant directed "non-U.S. borrowers to send their upfront fees to an AssetVest bank account in the United States." *Id*. ¶ 34(a). Upon receipt of the upfront fee, Defendant directed Co-Conspirator 2 "to invest the upfront fee in a portfolio of securities held in a brokerage account in the name of AssetVest." *Id*. 34(b). Once invested, Defendant directed Co-Conspirator 2 to obtain a margin loan from the invested upfront fee and wire it to an Ethos bank account. ECF 29 ¶ 34(c). To perpetuate this unlicensed transmission of money, Defendant and AssetVest

promoted to the public and to the non-U.S. borrowers that AssetVest was merely an independent custodian of the upfront fees rather than passing those funds to Ethos. *Id*. ¶ 34(d).

The SI identifies five specific unlicensed money transmissions from AssetVest to Ethos:

| On or About Date | Amount Transmitted | Ethos's Receiving Bank | SI Paragraph |
|---|---|---|---|
| May 3, 2021 | $350,000 | Wells Fargo | ¶ 35(a) |
| May 12, 2021 | $325,000 | Wells Fargo | ¶ 35(b) |
| May 14, 2021 | $975,000 | Wells Fargo | ¶ 35(b) |
| June 22, 2021 | $1,825,967 | Bank of America | ¶ 35(d) |
| August 18, 2021 | $2,243,048 | Citibank | ¶ 35(e) |

In total, the SI alleges that between April 2021 and December 2022, AssetVest transmitted approximately $22,245,213.30 on behalf of Ethos's non-U.S. borrowers to bank accounts controlled by Ethos. ECF 29 ¶ 35(f). In addition, the SI alleges that on December 29, 2022, Defendant paid AssetVest a $200,000 fee for the unlicensed transmission of funds. *Id*. 35(g).

## III. Discovery

Between January 5, 2024, and September 5, 2024, the government made eight productions of discovery. The government anticipates the only discovery left includes rolling productions of Defendant's jail calls and emails, unforeseen documents produced by victims who have yet to contact the United States, and potential statements discoverable under Rule 26.2/Jencks. In addition, on February 7, 2024, and April 19, 2024, the government, Defendant, and his attorneys met at the U.S. Attorney's Office and engaged in a "reverse proffer" where the government presented and outlined its evidence in support of the charges.

Generally, the discovery includes the following categories of things: (1) grand jury materials including documents obtained from grand jury subpoenas and Mutual Legal Assistance Treaty requests, primarily from financial institutions, and transcripts; (2) documents and electronic evidence received directly from Defendant's victims; (3) documents and electronic evidence received directly from cooperating co-conspirators; (4) electronic evidence seized from Defendant's cell phone, laptop, email account, and One Drive cloud account pursuant to lawfully obtained search warrants[1]; (5) electronic evidence seized from Defendant's various co-conspirator email accounts and one cell phone; and (6) law enforcement reports from interviews and investigative actions. The primary Bates range is OPL-000001 to OPL-374181 and secondary Bates ranges that third parties stamped prior to producing documents to the Government include (1) BTG_0000001 to BTG-0020729; (2) JEFF-SDCAL_00000001 to JEFF-SDCAL_00019820; (4) ETHOS-000001 to ETHOS-035268; and (5) BEYOND_LIMITS_000001 to BEYOND_LIMITS_011810.

Where applicable, each production included an index that indicated the beginning and ending Bates range, the source/custodian of the information, and a brief description of each Bates range to assist Defendant locate and process the data.

## ARGUMENT

### I. The Law Rejects the Relief Sought by Defendant Through a Bill of Particulars

#### A. The Motion is Untimely

Federal Rule of Criminal Procedure 7(f) allows that "[t]he defendant may move for a bill of particulars before or within 14 days after arraignment or at a later time if the court permits." Here, Defendant has made no showing why the court should entertain this untimely motion. This Court should deny on timeliness grounds alone.

[1] The United States also produced the unseized raw data from these digital media in addition to what the United States seized. Thus, Defendant has *more* than what the government has.

On April 3, 2024, the court arraigned Defendant on the SI. ECF 34. At that point Defendant was made aware of the specific charges against him in the 16-page 38-paragraph charging document. Fourteen days came and went, but Defendant sought no relief thereby effectively conceding that the SI was sufficiently designed to apprise him of "the specific charges being presented to minimize danger of surprise at trial, to aid in preparation and to protect against double jeopardy." *United States v. Long*, 706 F.2d 1044, 1054 (9th Cir. 1983).

But on August 30, 2024—four months and 27 days after the arraignment and three months and 20 days after retaining new counsel—Defendant filed a "Motion for Bill of Particulars and for an Order Directing the Government to Provide Notice Under Fed. R. Crim. P. 12(b)(4)(B)." ECF 55. Defendant fails to articulate a single reason why this Court should permit this inexcusable delay. Indeed, Defendant cannot because the real purpose of the motion—"to identify the specific companies and individuals that will be the subject of proof during the Government's case-in-chief"—is an improper one. As explained below, "[t]he defendant's constitutional right is to know the offense with which he is charged, not to know the details of how it will be proved." *United States v. Kendall*, 665 F.2d 126, 135 (9th Cir. 1981); *see also United States v. Galecki*, No. 15-CR-00285-APG, 2018 WL 2390062, at *3 (D. Nev. May 24, 2018) ("Evidentiary details such as the who, what, when, where, and why of the crimes alleged fall within the scope of discovery and do not warrant a bill of particulars.").

B. Full Discovery Eliminates the Need for a Bill of Particulars

This Court should also deny the motion for a bill of particulars because the government has produced full discovery pursuant to Federal Rule of Criminal Procedure 16.

The details of the charged offense that are not self-evident in the SI have already been disclosed in the comprehensive discovery in this case. The Ninth Circuit has stated in the clearest of terms that "full discovery also obviates the need for a bill of particulars." *United States v. Giese*, 597 F.2d 1170, 1180 (9th Cir. 1979); *Long*, 706 F.2d at 1054 ("Full

discovery will obviate the need for a bill of particulars"); *United States v. Doney*, 655 F. App'x 561, 562 (9th Cir. 2016); *United States v. Martinez*, No. 13-CR-3560-WQH, 2014 WL 5480686, at *8 (S.D. Cal. Oct. 28, 2014).

As discussed above, the government's eight discovery productions have provided Defendant with all the information he needs to prepare his defense and avoid unfair surprise at trial. Defendant is quick to complain about the volume of discovery, but the facts sought by Defendant's motion are easily retrievable from the discovery that has included detailed indexes to assist the defense locate items. Indeed, defense counsel's declaration confirms Defendant has found all 51 victims identified in the discovery. ECF 55-1, Diehl Decl. ¶ 7. As illustrated above in Section III. Discovery, the key evidence relating to Defendant's fraudulent conduct are in the grand jury subpoena returns, all statements by victims, cooperating co-conspirators, witnesses, and law enforcement personnel, seized communications from Defendant's digital devices and accounts, and a list of all victims known to the government. This discovery sufficiently informs Defendant about the government's theory of the case and what to expect at trial. Because the government has not withheld any such information, and has aided the defense in navigating it and locating specific items, Defendant is well-situated to answer his own questions by referring to the evidence itself. The SI and discovery satisfy the purpose of a bill of particulars and contains all the information concerning Defendant's criminal conduct known to the government. Thus, the defense is on equal footing with the government in its ability to review the evidence and locate relevant inculpatory and exculpatory items.

Certainly, if Defendant contends that his advance fee business model was not an illegal scheme because many investors received funding, then it would be apparent to him which disgruntled borrowers would claim to be victims and finding that evidence in the discovery would be easy. It is presently telling that Defendant seeks a bill of particulars because he claims to have a challenging time marshalling the discovery and recalling the who, what, when, where, and why regarding which borrowers might be victims or called at trial. Defendant's tell calls to mind the wise observation that "if you tell the truth you

don't have to remember anything." *Equal Employ. Opp. Comm'n v. U.S. Parcel Service, Inc.*, 2018 WL 1402240, at *6 (E.D.N.Y. Mar. 5, 2018) (quoting *Mark Twain's Notebook* 240 (Albert Bigelow Paine ed., 1935)).

Defendant cherry picks snippets of cases to support of his argument, but each case is readily distinguishable. In *Rothenberg*, a district court ordered a bill of particulars due in part to the voluminous discovery—"more than 475,000 Bates-numbered pages or items . . . and a hard drive containing ~300 GB of data." *United States v. Rothenberg*, 20-CR-266-JST, 2021 WL 6807581, at *3 (N.D. Cal. Dec. 6, 2021). However, the *Rothenberg* Court did not premise its reasoning solely on the amount of discovery, but rather finding "it unreasonable to expect Rothenberg to try and identify the unenumerated victims in this mountain of discovery." *Id.* Here, by Defendant's own admission, *see* ECF 55-1, Diehl Decl. ¶ 7, the Government has identified each victim such that Defendant need not blindly comb through a mountain of discovery.

Nor does *United States v. Trumpower* achieve Defendant's goal. There, the indictment contained "no pleading of the factual circumstances of the specific mail and wire fraud that produced" the funds at issue in two money laundering charges, and pleaded "a factual background describing a fraudulent scheme . . . only in completely generic terms." *United States v. Trumpower*, 546 F. Supp. 2d 849, 851-52 (E.D. Cal. 2008). The SI in this case charges Defendant with six substantive counts of fraud, two counts of aggravated identity theft, and the operation of an unlicensed money transmission business, each distinguished by date and other identifying details including, where applicable, communications containing a fraudulent statement, wire transfer amount, and bank information. The SI also pleads the factual circumstances of the schemes to defraud, explaining several categories of Defendant's false representations to borrowers. This level of specificity goes far beyond the "completely generic terms" at issue in *Trumpower*.

C. The SI Adequately Informs Defendant of the Charges He Faces

Even if this Court were to excuse the untimeliness of Defendant's motion and further conclude that full discovery does not eliminate the need for a bill of particulars, it should still deny the relief.

Rule 7(f) provides that a court may direct the government to file a bill of particulars. A motion for a bill of particulars is appropriate where a defendant requires clarification to prepare a defense. *Long*, 706 F.2d at 1054. The bill of particulars itself is "designed to apprise the defendant of the specific charges being presented to minimize danger of surprise at trial, to aid in preparation and to protect against double jeopardy." *Id.* A court should order a bill of particulars only when the indictment is "too vague and indefinite for such purposes." *Giese*, 597 F.2d at 1180 (quotation omitted). A bill of particulars is not meant to give the defense a preview of the government's proof at trial. "A defendant is not entitled to know all the evidence the government intends to produce, but only the theory of the government's case." *Yeargain v. United States*, 314 F.2d 881, 882 (9th Cir. 1963). "[I]f the information sought by defendant is provided in the indictment or in some acceptable alternate form, no bill of particulars is required." *United States v. Bortonovsky*, 820 F.2d 572, 574 (2d Cir. 1987). One important reason to limit the use of the bill is "to avoid freezing the government's case as a result of the rule that evidence at trial must conform to the bill." Wright, 1 Fed. Prac. & Proc. Crim. § 130 (4th ed.). The decision whether to grant a request for a bill of particulars is within the trial court's discretion, and such decisions are disturbed only for abuse of discretion. *Long*, 706 F.2d at 1054; *United States v. Clay*, 476 F.2d 1211, 1215 (9th Cir. 1973).

The SI satisfies the constitutional and procedural requirements of putting Defendant on notice regarding the charges and enabling him to argue double jeopardy and avoid prejudice. Along with the discovery in this case, the SI contains enough detail to minimize the danger of surprise at trial. Not only does the SI describe Defendant's scheme to defraud borrowers, it details the specific types of misrepresentations Defendant used to fool his victims, including allegations as to why those representations were false. The government

is not required to determine and disclose the exact timing and surrounding circumstances of each misrepresentation. *See Giese*, 597 F.2d at 1180 ("Appellant's request for the 'when, where, and how' of every act in furtherance of the conspiracy was equivalent to a request for complete discovery of the government's evidence, which is not a purpose of the bill of particulars.").

The cases cited by Defendant—in which courts ordered bills of particulars to supplement minimalist indictments—are easily distinguished. For example, in *Bortonovsky*, an out-of-circuit case, the indictment charged the defendants with submitting false claims for burglary losses, but did not specify which of fifteen burglaries the defendants had fabricated, requiring the defense to waste effort proving that many of the claimed burglaries actually had occurred. *United States v. Bortonovsky*, 820 F.2d 572, 574-75 (2d Cir. 1987). The prejudice to the defense in that case arose partly because defense counsel "had only four days within which to prepare a defense." *Id.* at 575. Here, in contrast, the SI gives notice of specific misrepresentations Defendant will need to address at trial, and defense counsel has had ample time to review the discovery detailing the misrepresentations and prepare defenses, if any, to these charges.

D. <u>Defendant's Motion Weaponizes a Bill of Particulars for an Improper Purpose</u>

Defendant's stated purpose for a bill of particulars—"to identify the specific companies and individuals that will be the subject of proof during the Government's case-in-chief"—is an improper one and reveals the true motive behind the motion.

A bill of particulars is not intended as a tool for "complete discovery of the government's evidence." *Giese*, 597 F.2d 1170, 1180*; see also United States v. Smith*, 776 F.2d 1104, 1111 (3d Cir. 1985) (a bill of particulars is not the "equivalent of civil discovery" and "is not intended to provide the defendant with the fruits of the government's investigation"). But it is clear from Defendant's motion that he is attempting to use it as a discovery device.

There is no need for the Court to order a bill of particulars informing the defense of which victims might testify at trial. Courts recognize that "the proper scope and function

of a bill of particulars is not to obtain disclosure of evidence or witnesses to be offered by the Government at trial." *United States v. Nachamie*, 91 F. Supp. 2d 565, 570 (S.D.N.Y. 2000). The Ninth Circuit agrees, holding that a defendant is "not entitled to know all the *evidence* the government intends to produce but only the *theory* of the government's case" and it "not entitled to know the contents of the testimony of each of the government witnesses before trial." *United States v. Ryland*, 806 F.2d 941, 942 (9th Cir. 1986) (emphasis in original). Moreover, Defendant is already aware of the victims whom the government has interviewed as part of its investigation. Although the SI protects the identities of specific victims through anonymization, the government disclosed to the defense the identities of victims referenced in the SI.[2] The government has provided the defense with reports detailing the substance of those interviews, so Defendant is also fully aware of the statements those victims made to government investigators and any other information they provided. Because Defendant has those reports, Defendant has full access to the information in the government's possession concerning the victims and how they might testify about Defendant's deception.

Nor does Defendant's apparent wish to obtain foreign depositions and letters rogatory have any bearing on a bill of particulars analysis. Under Federal Rule of Criminal Procedure 16(a), a party may seek to depose a prospective witness. According to Rule 16's notes, "this means the party's own witness and does not authorize a discovery deposition of an adverse witness." Fed. R. Crim. P. 16 advisory committee's note to 1974 amendment. Accordingly, who or what the government will introduce in its case-in-chief is irrelevant to how Defendant develops his own case-in-chief. Indeed, a "bill of particulars, unlike discovery, is not intended to provide the defendant with the fruits of the government's investigation. Rather, it is intended to give the defendant only that minimum amount of

[2] At an August 8, 2024 meeting at the U.S. Attorney's Office, Government counsel confirmed with Brett Diehl and Marcus Bourassa the identities of each of the entities or individuals listed in Paragraphs 6-11. On May 30, 2024, the Government extended a plea offer to Defendant through an email to Marcus Bourassa and Tim Scott. That plea offer included a Microsoft Excel file and restitution addendum listing the names of 27 victims who had lost $99,904,064.51.

information necessary to permit the defendant to conduct his *own* investigation." *United States v. Taylor*, 2018 WL 4961608, at *2-3 (N.D. Cal. Oct. 12, 2018). Here, the SI and full discovery have adequately informed Defendant about the nature of the charges and the facts at issue for him to prepare his defense. He is free to interview anyone he wishes to build his case-in-chief.

**II. Defendant Inappropriately Asserts Rule 12(b)(4)(B)**

Defendant also appears to request the government's trial witness and exhibit list under Federal Rule of Criminal Procedure 12(b)(4)(B). ECF 55, Opp. at 6 ("Mr. Santos hereby requests . . . notice of the government's intent to use (in its evidence-in-chief at trial) any evidence that the defendant may be entitled to discover under Rule 16."). This is not what Rule 12(b)(4)(B) permits, and regrettably, nearly each case cited by Defendant stands affirmatively *against* his proposition. To the extent Defendant has properly invoked Rule 12(b)(4)(B), the government has given Defendant notice of its Rule 16 evidence that could be subject to a suppression motion.

Rule 12(b)(4)(B)'s text provides that:

> At the arraignment or as soon afterward as practicable, the defendant may, in order to have an opportunity to move to suppress evidence under Rule 12(b)(3)(C), request notice of the government's intent to use (in its evidence-in-chief at trial) any evidence that the defendant may be entitled to discover under Rule 16.

Fed. R. Crim. P. 12(b)(4)(B). The Advisory Committee's note to Rule 12 and case law "makes clear that, consistent with its text, the Rule's core purpose is to ensure that a defendant '*can make his motion to suppress prior to trial*' by 'request[ing] the government to give notice of its intention to use *specified evidence* which the defendant is entitled to discover under Rule 16." *United States v. Ishak*, 277 F.R.D. 156, 158 (E.D. Va. 2011) (quoting Fed. R. Crim. P. 12, advisory committee note to 1974 amendment) (emphasis in original).

By its text, Rule 12(b)(4)(B) is therefore limited in two important respects. The first limitation operates as a restriction of purpose. The Rule entitles defendants to notice of evidence that the government intends to use only insofar as that notice would provide the

defendant with sufficient information to file a suppression motion. *Ishak*, 277 F.R.D. at 158; *see also United States v. de la Cruz–Paulino*, 61 F.3d 986, 994 (1st Cir. 1995) (holding that the rule "allows defendants to request notice of the government's intent to use evidence '*in order to afford an opportunity to move to suppress evidence*' under subsection (b)(3) of this rule"; *United States v. Lanier*, 578 F.2d 1246, 1254 (8th Cir.1978) (emphasizing Rule 12(b)(4)(B) "contemplates motions filed in preparation for actual or potential motions to suppress evidence"); *United States v. Losch*, No. 19-CR-294-PHX, 2019 WL 6524874, at *4-5 (D. Az. Dec. 4, 2019); *United States v. Lujan*, 530 F. Supp. 2d 1224, 1246 (D.N.M.2008); *accord* 1A Charles A. Wright & Andrew D. Leipold, Federal Practice & Procedure: Criminal § 195, at 451( 4th ed. 2008) (stating that Rule 12(b)(4)(B) is "intended to facilitate the making of a pretrial motion for the suppression of evidence"). In this respect, the Rule "was not designed to aid the defendant in ascertaining the government's trial strategy." *de la Cruz–Paulin*o, 61 F.3d at 994; *accord Losch*, 2019 WL 6524874, at *4. Nor can defendant weaponize Rule 12(b)(4)(B) as a rule of trial strategy to require the government to outline its case or disclose its exhibit and witness list. *Ishak*, 277 F.R.D. at 159-160; *Losch*, 2019 WL 6524874, at *4-5; see also *United States v. El–Silimy*, 228 F.R.D. 52, 57 (D. Me. 2005) (holding Rule cannot be used "to force the government to decide precisely which documents provided in discovery it will offer at trial and to prevent it from using any that it does not so designate").

Here, Defendant's request runs afoul of this first limitation of purpose because it is untethered to any decision to file a suppression motion. Rather, Defendant seeks to make the government disclose its entire witness and exhibit list more than three months before trial in an apparent effort to restrain the government from altering its litigation strategy after disclosure. Regrettably, Defendant selectively cites caselaw out context, but had he read the entirety of those cases Defendant would have learned those cases affirmatively reject his desired relief. For instance, Defendant relies on *United States v. de la Cruz-Paulino* to contend that courts reject government "open file polic[ies]" and references to "extensive discovery" as sufficient notice under Rule 12(b)(4)(B). ECF 55 at 7 (citing 61

F.3d at 993). Had Defendant kept reading *de la Cruz-Paulino*, Defendant would have learned the First Circuit held that Rule 12(b)(4)(B) "was not designed to aid the defendant in ascertaining the government's trial strategy, but only in effectively bringing suppression motions before trial, as required by Rule 12(b)(3)." 61 F.3d at 994. Indeed, at issue in *de la Cruz-Paulino* was whether the district court abused its discretion in admitting *seized* evidence that the government failed to disclose its intent to use. *Id.* at 992-93. Similarly, Defendant misapplies *United States v. Anderson*, *see* ECF 55 at 7, failing to recognize the *Anderson* Court's recognition that Rule 12(b)(4)(B)'s notice requirement "is clear" in that it only applies to "the material seized" from Defendant. 416 F. Supp. 2d 110, 112 (D.D.C. 2006). Likewise, Defendant misreads *United States v. Kelley*, *see* ECF 55 at 7, which interpreted Rule 12(b)(4)(B) in the context of a defense motion seeking notice of evidence "subject to a motion to suppress." 120 F.R.D. 103, 106-07 (E.D. Wis. 1988). These very cases cited by Defendant make it clear he seeks to abuse Rule 12(b)(4)(B) for an improper purpose.

The second limitation operates as a restriction of procedure. The notice requirement of Rule 12(b)(4)(B) is only triggered when the defendant identifies specific evidence that is potentially suppressible. *United States v. Conyers*, No. 15-CR-537, 2016 WL 7189850, at *10 (S.D.N.Y. Dec. 9, 2016); *Ishak*, 277 F.R.D. at 159. In other words, the defendant must first identify specific evidence discoverable under Rule 16 that may be the subject of a future suppression motion before the government must provide notice of whether it intends to offer that specified evidence during its case-in-chief. *Conyers*, 2016 WL 7189850, at *10; *Ishak*, 277 F.R.D. at 159-160; *see also United States v. Bunch*, No. 3:09-CR-127, 2009 WL 4784637, at *1 (E.D. Tenn. Dec. 8, 2009) ("[T]he defendant must decide … whether a particular piece of discoverable evidence is arguably subject to suppression ... and then he may request notice from the government regarding whether it intends to use that evidence in its case-in-chief-at trial. Once requested, the government is required under Rule 12(b)(4)(B) to give such notice.").

In this case, Defendant has never identified specific discoverable material which it believes may be subject to a future suppression motion. Rather, Defendant has simply, and boldly, demanded the government's entire witness and exhibit list under its contorted interpretation of Rule 12(b)(4)(B). To the extent Defendant has properly invoked the rule, the government has complied. *See* Exhibit 1.

On July 25, 2024, the government provided the following notice to Defendant:

> Here, the government has seized, pursuant to lawfully obtained (and produced) search warrants, Mr. Santos' cell phone contents, emails from his account (carlos@ethosasset.com), and data from his Microsoft OneDrive account. The government has produced everything it seized from these Fourth Amendment searches and will rely on evidence from each of those seized sets of data at trial, including all of Mr. Santos' seized WhatsApp messages.

*Id.* Nothing more is required.

## **CONCLUSION**

For these reasons, the government respectfully asks this Court to deny Defendant's motion for a bill of particulars and conclude that Rule 12(b)(4)(B) does not warrant the relief sought by Defendant.

DATED: October 11, 2024

Respectfully submitted,

TARA K. McGRATH
United States Attorney

/s/*E. Christopher Beeler*
E. Christopher Beeler
Carl F. Brooker IV
Assistant United States Attorney