TARA K. McGRATH
United States Attorney
E. CHRISTOPHER BEELER
California Bar No.: 330496
New York Bar No.: 5422068
CARL F. BROOKER, IV.
Assistant U.S. Attorneys
Washington DC Bar No.: 1022908
Office of the U.S. Attorney
880 Front Street, Room 6293
San Diego, CA 92101
Tel: (619) 546-7748
Fax: (619) 546-0510
Email:     christopher.beeler@usdoj.gov
           carl.brooker@usdoj.gov

Attorneys for the United States

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>CARLOS MANUEL DA SILVA SANTOS et al.,<br><br>　　　　Defendants. | Case No.: 23-CR-2507-RSH<br><br>**GOVERNMENT'S RESPONSE TO:**<br><br>**(1) Defendant's Motion to Take a Foreign Deposition of Hasan Omeroglu, ECF 77;**<br>**(2) Defendant's Motion to Clarify/Confirm Case-in-Chief Evidence, ECF 78**<br>**(3) Defendant's Motion for an Order for Subpoenas and Letters Rogatory, ECF 78; and**<br>**(4) Defendant's Motion for an Order Issuing a Letter Rogatory for Ethos Capital Brasil's Records, ECF 79.** |

## INTRODUCTION

Defendant's hodgepodge of discovery motions are either improper or require heightened scrutiny before permitting relief. The foreign deposition request of Mr. Omeroglu fails to establish how he could—without walking back his sworn declaration—offer substantial proof of a material fact. Defendant's motion to "clarify" the government's

case simply re-makes old arguments from his motion for a bill of particulars previously rejected by this Court. Defendant's motion for subpoenas *duces tecum* under Federal Rule of Criminal Procedure 17(c) lacks a substantive non-conclusory declaration and fails to articulate proper bases of admissibility for the communications sought. The motion for a letter rogatory to Ethos Capital Brazil Ltda (Ethos Brazil) fails to inform the court of a material fact—Defendant Santos *personally owns* over 66% of Ethos Brazil. Therefore, Defendant Santos can exercise his ownership authority to obtain whatever documents he needs. For these reasons, the court should deny the motions or limit the relief as outlined below.

## I.     The Court Should Deny the Motion to Take a Foreign Deposition

Defendant contends that Hasan Omeroglu can provide material testimony that "other individuals . . . could have sent the emails, messages, and documents at the center of the government's case against Mr. Santos." ECF 77 at 5. Unfortunately for Defendant, Mr. Omergolu's declaration and the investigation report that he incorporates into that declaration forecloses such testimony. Moreover, during various time frames when Mr. Santos emailed fabricated financial documents to victims and others, Mr. Omergolu lacks personal knowledge because he was either not employed at the time or Mr. Santos was in the United States where Mr. Omergolu concedes he did not go.

Defendant cannot clear the first hurdle for a foreign deposition requiring that Mr. Omergolu's testimony "could provide substantial proof of a material fact." Fed. R. Crim. P. 15(c)(3)(A). A survey of case law indicates that that "substantial proof" requires personal knowledge of a material fact. For instance, in *United States v. Long Van Nguyen*—a murder for hire case arising in Vietnam—the court authorized a foreign deposition of defendant's nephew and a foreign undercover agent because they would testify "that defendant gave specific instructions to his nephew regarding the details of the murders [and] . . . both witnesses could testify that defendant's nephew showed the [foreign] undercover agent where defendant's wife's relative's lived so he would know where to find the targets." No. CR12-212RSL, 2013 WL 2402957, at *2 (W.D. Wash.

| | |
|---|---|
| 1 | May 31, 2013).  In an espionage case, the court allowed foreign depositions because each |
| 2 | prospective witness had a position at a Chinese University "that gave them direct personal |
| 3 | knowledge whether [defendant] accepted a position or worked there and indicates that all |
| 4 | four would testify that [defendant] never did." *United States v. Tao*, No. 19-20052-JAR, |
| 5 | 2021 WL 5205446, at *3 (D. Kan. Nov. 9, 2021).  In a terrorism case, the court permitted |
| 6 | a foreign deposition because the witness "personally observed . . . the defendant's |
| 7 | radicalization and the path he traveled . . . in an effort to become a martyr." *United States* |
| 8 | *v. Trabelsi*, No. 06-CR-89 (RDM), 2023 WL 4341429, at *2 (D.D.C. Apr. 5, 2023).  These |
| 9 | cases illustrate that "substantial proof" is achieved where the witness has personal and |
| 10 | significant knowledge about an element or a key fact.  Mr. Omeroglu lacks such |
| 11 | knowledge. |
| 12 |      Defendant proffers that Mr. Omergolu "is uniquely positioned to testify about other |
| 13 | individuals who . . . could have sent the emails, messages, and documents at the center of |
| 14 | the government's case."  ECF 77 at 5.  However, Defendant's own evidence contradicts |
| 15 | this assertion.  Defendant attaches Mr. Omergolu's November 8, 2024 Declaration, which |
| 16 | with the exception of two immaterial points, fully adopts investigator Caitlin Ashton's |
| 17 | September 6, 2024 report.  Omergolu Decl. ¶ 3, ECF 77-2.  Specifically, Mr. Omergolu |
| 18 | attests "I have reviewed the report authored by investigator Caitlin Ashton on September |
| 19 | 6, 2024 and attached as Exhibit A.  It accurately captures the information I shared with |
| 20 | her."  *Id.*  In turn, the Ashton Report—which Mr. Omergolu confirmed under oath is |
| 21 | accurate—provides that Mr. Omergolu "couldn't say what [Ethos employees] were doing |
| 22 | or confirm whether they sent emails from Carlos' account" with respect to the non- |
| 23 | quantified times Mr. Omergolu "had seen" an Ethos employee use Defendant's computer. |
| 24 | Ashton Report at 3, ECF 77-1.  Thus, unless Mr. Omergolu plans to commit perjury, he |
| 25 | cannot offer *any* testimony about a *single* person sending *any* email from Defendant's |
| 26 | computer because he's provided sworn testimony to the contrary.  He lacks personal |
| 27 | knowledge about this purported third-party culpability defense because Mr. Omergolu |
| 28 | cannot place anyone at or near a specific criminal act.  Indeed, the Ashton Report and the |

3

Omergolu Declaration is void of any specific dates, times, instances, or alleged overt acts that have any bearing on this case. Any testimony offered by Mr. Omeroglu about who emailed certain documents on certain days to certain victims would be merely speculative and not based on personal knowledge. And even if he might testify that unnamed people had access to Defendant's computer, he cannot testify that they "could" have sent emails because he's already affirmed the fact he does not know what people did on Defendant's laptop. Any testimony on this topic would be speculative. He cannot offer "substantial proof."

Moreover, Defendant was not with Defendant during large swaths of time when Defendant was engaged in fraudulent activity using his email account and therefore cannot offer "substantial proof" on any criminal conduct during those periods. Mr. Omeroglu declares that his employment with Ethos started in October 2021, *see* Omeroglu Decl. ¶ 1, ECF 77-2, but Counts 2 and 3 of the Superseding Indictment allege fraudulent conduct by Defendant prior to that month. ECF 29 ¶¶ 26-27. In addition, TECS records—which have been produced to Defendant—show Defendant in the United States during periods of time when he sent fraudulent financial documents to victims.[1] But Mr. Omeroglu never traveled to the United States with Defendant; Mr. Omeroglu states that he does "not have a visa or other permission to enter the United States," Omeroglu Decl. ¶ 7, and confirms the accuracy of the Ashton Report stating that "The only time Hasan was not with Carlos was during times Carlos traveled to London or the United States due to visa restrictions." Ashton Report at 2, ECF 77-1. For example, Defendant was in the United States between October 16 - 26, 2022. According to the Superseding Indictment, Defendant emailed a series of fraudulent financial documents to U.S. Financial Institution 1 on October 22, 2022. Thus, on these occasions Defendant lacks personal knowledge and cannot offer any "substantial proof of a material fact." The undeniable fact that Mr. Santos was sending

---

[1] TECS records reveal Defendant in the United States between June 30, 2021 and September 15, 2021, October 16 – 26, 2022, January 10-19, 2023, May 14-21, 2023, August 6-12, 2023, and September 10-21, 2023.

4

emails containing fraudulent financial information while in the United States further undercuts the speculative theory that Mr. Omeroglu could establish "substantial proof" of a third party culpability defense based on the premise that on other occasions an un-named Ethos phantom employee secretly tip-toed into Defendant's office, created fraudulent documents on the fly, emailed them to induce victims, but only to cause money to be deposited into bank accounts under Defendant's exclusive control. It is senseless and the court should not countenance the request.

Nor can Mr. Omergolu offer any meaningful testimony on anything else because he admits that he "did not have information related to the Ethos business model" and "Ethos never required upfront fees before starting a project," a statement that Defendant all but concedes in prior briefing is not true.

Rather than being able to offer "substantial proof" about who sent emails from Defendant's computer other than Defendant, the Ashton Report makes clear that Defendant is attempting to use Mr. Omeroglu as a character witness through opinion testimony. For instance, Mr. Omergolu claims through the Ashton Report the following opinions about Defendant's character:

- "never saw Carlos show bank statements to potential clients or current clients, nor did he witness any false representations being made"[2] because "*Carlos had no need for such actions, and it would have been completely out of character for him. He was highly sensitive about compliance and always adhered strictly to the rules*." Ashton Report at 4, ECF 77-1 (emphasis added).
- It is not Hasan's opinion that Carlos [is a man engaged in fraud]. Hasan does not believe Carlos would intentionally engage in fraud." *Id.* at 5.
- Hasan described Carlos as a family man. *Id.*

---

[2] This tracks with his role as a security officer who knows nothing about the Ethos business. He would not have been privy to the inner workings of the company or its financials.

1         • Carlos is a workaholic with little social life. *Id.*

2     These opinions fall short of the "exceptional circumstances" requirement to
3 authorize a deposition in the first instance because they do not bear on a "material" issue
4 to this case. *United States. Lynch*, No. 18-CR-00577-CRB, 2023 WL 7927764, at *1 (N.D.
5 Cal. Nov. 15, 2023). Nor do these opinions offer "substantial proof of a material fact"
6 because they do not bear significantly on contested issues. The court should see this motion
7 for what it is—a discovery fishing expedition hoping to obtain character evidence and
8 testimony based on speculation rather than personal knowledge instead of pursuing a
9 proper Rule 15 purpose to obtain "substantial proof of a material fact."

10    **II.**    **The Court Should Deny the Motion to Clarify/Confirm the Case-In-Chief**

11     Defendant's "Motion to Confirm Case-in-Chief" is peculiar. ECF 78. It seems to
12 re-hash (or re-style) old arguments from its August 30, 2024 motion for a bill of particulars
13 that this Court rejected, but nevertheless caused the government to acquiesce that the Count
14 1 victims were limited to 27 plus those identified in the Superseding Indictment. ECF
15 55,70. This instant motion is the dog that caught the car; Defendant got what he wanted—
16 a narrowing of the potential victim-witnesses—but remains unhappy with what he
17 received. Because this issue has already been briefed, argued, and resolved, the government
18 fully adopts its briefing on the same issue at ECF 69 and reiterates the same arguments it
19 made during the October 18, 2024, motion hearing on the same issue. The government has
20 no objection to the court ordering the government to follow what it already represented it
21 would do in front of the court on October 18, 2024.

22     In the span of approximately four years, Defendant was able to defraud dozens of
23 victim-companies and individuals who reside throughout the world. While the government
24 currently calculates actual loss at around $100 million, a recent co-conspirator interview
25 alerted the government that on the date of Defendant's arrest—November 12, 2023—Ethos
26 owed its clients approximately $350 million. This new potential loss number is one of many
27 new pieces of information causing Defendant's position to deteriorate as even more
28

6

evidence of guilt accumulates. Consequently, the government is reticent to narrow its case for the convenience of the Defendant as additional victims and evidence come forward.

If the government plans to call a victim as a trial witness, there will have been a report of interview (ROI) completed by the case agents and the government will have produced the ROIs along with any additional documents relevant to the victim. In this situation, Defendant will be on the same equal footing as the government when it comes examining the witness. Ultimately, the government's role is to do justice for the People of the United States and the victims in this case. As a matter of professional courtesy, the government agreed to limit its victim-witnesses relating to Count 1 to the identified 27 potential victim-witnesses and those identified in the Superseding Indictment. Apparently displeased with receiving what he wanted, Defendant now asks for more. The government is under no obligation to narrow its case for the Defendant's convenience at the potential expense of victims, and respectfully declines to do so.

### III. Motion for Rule 17(c) Subpoenas

Defendant fails to meet the requirements for a Federal Rule of Criminal Procedure 17(c) subpoena for two reasons: (1) Defendant has offered a conclusory and self-serving declaration that the court should ignore; and (2) Defendant has failed to articulate valid bases of admissibility.

Federal Rule of Criminal Procedure 17(c)(1) permits the Court to direct that documents subpoenaed by parties be produced prior to trial. The rule provides:

> (c) **Producing Documents and Objects. (1) In General:** A subpoena may order the witness to produce any books, papers, documents, data, or other objects the subpoena designates. The court may direct the witness to produce the designated items in court before trial or before they are to be offered in evidence. When the items arrive, the court may permit the parties and their attorneys to inspect all or part of them.

Fed. R. Cr. P. 17(c) (1). In turn, the Local Rules of this court state:

> No subpoena in a criminal case may require the production of books, papers, documents or other objects at a date and time or place other than the date, time

and place at which the trial, hearing or proceeding at which these items are to be offered in evidence is scheduled to take place, unless the Court has entered an order under Rule 17(c) of the Federal Rules of Criminal Procedure authorizing the issuance of such subpoena. Any motion for the issuance of a subpoena under Rule 17(c) must be made to the judge assigned for the trial, hearing or proceeding at which the subpoenaed witness or items are to be offered, and must be returnable in no less than seven (7) days from the filing of the motion.

S.D. Cal. Crim. R. 17.1(b). The Local Rules also provide that:

> Motions seeking subpoenas duces tecum under this subsection must be supported by an affidavit or declaration establishing that: (1) the documents or objects sought are evidentiary and relevant; (2) that the documents or objects sought are not otherwise reasonably procurable in advance of the trial, hearing or proceeding by exercise of due diligence; (3) that the moving party cannot properly prepare for trial without such production and inspection in advance of trial and the failure to obtain such inspection may tend unreasonably to delay the trial, and (4) that the application is made in good faith and is not intended for the purpose of general discovery.

*Id.* Local Rule 17.1(b) reflects the standard set out by the Supreme Court for a party to obtain documents through a subpoena prior to trial. *See United States v. Nixon*, 418 U.S. 683, 699 (1974). *Nixon* and the Ninth Circuit explain that the party seeking pre-trial production of documents under Rule 17(c) must show "(1) relevancy; (2) admissibility, and (3) specificity." *Id.* at 700; *United States v. Eden*, 659 F.2d 1376, 1381 (9th Cir. 1981).

*First*, following the government's November 13, 2024 opposition to a motion for a subpoena to Google LLC, *see* ECF 82, Defendant attempted to comply with Local Rule 17.1 by filing a declaration that same day seeking to make it applicable to all pending Rule 17(c) motions. ECF 84-1. Not only is this declaration late (it was by court order due November 8, 2024), it is conclusory in nature and fails to offer any substantive factual bases upon which this Court could make a decision on the merits. Courts frequently encounter self-serving declarations in the civil summary judgment context. In those instances, the Ninth Circuit permits district courts to "disregard a self-serving declaration that states only conclusions and not facts that would be admissible in evidence." *Nigro v.*

1 *Sears, Roebuck and Co.*, 784 F.3d 495, 497 (9th Cir. 2015).  Drawing on this analogy, this Court should disregard Defendant's declaration because it is conclusory in nature and provides no facts about (1) why documents and objects are evidentiary and relevant; (2) why documents and objects are not reasonably procurable in advance of trial through due diligence; (3) why Defendant cannot prepare for trial without the desired documents; and (4) why the motion is brought in good faith and not for general discovery.  Without more, Defendant fails to comply with basic requirements and the court should deny the motion.

*Second*, Defendant fails to articulate adequate bases of admissibility. The government remains perplexed about Defendant's primary argument of admissibility: "many of the statements exchanged between Ethos or its associates and alleged victims about negotiating potential financing and its terms . . . are considered 'verbal acts.'" ECF 78 at 10. Relying on *United States v. Pang*, Defendant seems to suggest that out-of-court statements occurring during business negotiations constitute "legally operative verbal conduct that is not hearsay." 362 F.3d 1187, 1192 (9th Cir. 2004). Regrettably, *Pang* does not stand for the proposition that statements between individuals made during business negotiations are 'verbal acts.' Instead, *Pang*'s verbal acts were paper checks as negotiable instruments. Therefore, "[C]hecks themselves, together with the tellers' markings and routing stamps, ... are commercial events which create legal rights and obligations, and therefore no exception to hearsay need be found [to admit checks into evidence]." *Id*. citing *United States v. Dababneh*, 28 M.J. 929, 935 (N.M.C.M.R.1989). While checks are obviously verbal acts, to be a verbal act, "a statement must affect the legal rights of the parties or be a circumstance bearing on the rights of the parties." *United States v. Corona*, 359 F. App'x 848, 852 (9th Cir. 2009). Defendant's contorted application of "verbal acts" law would turn the rule against hearsay on its head and render admissible nearly every out of court statement uttered between people discussing a business arrangement.  That is not the law.

Nor can Defendant's theory that "internal communications" could be "non-hearsay" to "illustrate the immateriality of alleged false or misleading statement" possibly show a

9

basis of admissibility. ECF 78 at 10. This is precisely what the rule against hearsay forbids. It is inconceivable that "internal communications" could be "non-hearsay" if offered to show the "immateriality of alleged false or misleading statements" because materiality goes directly to the truth of an asserted matter. Nor can Federal Rule of Evidence 803(6) offer a universal basis of admissibility because the business records exception won't necessarily capture email communications that are not records kept in the ordinary course of business. Having failed to articulate proper bases of admissibility, the court should deny the motions.

### IV. Letter Rogatory to Ethos Brazil

"The decision to issue a letter rogatory rests squarely within the discretion of the court, not the government." *United States v. Sedaghaty*, 728 F.3d 885, 917 (9th Cir. 2013). Therefore, the government defers to the Court. However, there is a misstatement in the Defendant's filing that the Court ought to consider in its analysis before signing any proposed letter rogatory. ECF 79-1.

Defendant contends that "Ethos Brasil is not controlled by Mr. Santos," *see* ECF 79 at 2, but evidence obtained by the government (and turned over to Defendant) proves this statement false. Specifically, Defendant states that Ethos Asset Management owns 33% of Ethos Brazil, Mayra Couto owns 34%, and Ethos Ticari Danışmanlık[3] owns the other 33%. *Id.* But these ownership percentages are equivocations—they tell the incomplete truth.

On October 22, 2022, Defendant emailed U.S. Financial Institution 1 with documents in support of his request for a $14.8 million credit facility backed by standby letters of credit. Defendant needed to explain Ethos' corporate structure, so he included a corporate flow chart. *See* Exhibit 1.

---

[3] Google translate gives Ticari Danışmanlık as "Business Consulting" in a Turkish to English translation.

10



The flowchart above shows the following:
- Carlos Santos personally owns 60% of Ethos Commercial Consultancy.
- Carlos Santos personally owns 99% of Ethos Asset Management Inc.
- Ethos Asset Management Inc. owns 40% of Ethos Commercial Consultancy.
- Ethos Asset Management Inc. owns 33.33% of Ethos Brazil.
- Ethos Commercial Consultancy owns 33.33% of Ethos Brazil.

Using basic arithmetic, Defendant's own corporate structure shows that he personally owns approximately 66.18% of Ethos Brazil. As such, Mayra Couto cannot be the controlling shareholder as the proposed letter rogatory states.[4] Instead, as the

---

[4] Furthermore, Government cannot verify the Defendant's other self-serving factual statements in the proposed Letter Rogatory. To be sure, the Government has seen

11

controlling shareholder, Defendant can exert his authority through Ethos Asset Management, Inc. and the Ethos Commercial Consultancy to obtain whatever records he wants. Therefore, the government urges this Court to scrutinize Defendant's request for a letter rogatory to Ethos Brazil because it appears unnecessary given the *true* ownership structure.

In addition, if the court authorizes a letter rogatory to Ethos Brazil (or any other foreign entity), it should not adopt Defendant's proposed factual findings without requiring proof of those facts. Here, the proposed letter rogatory to Ethos Brazil contains an approximate single page of facts that, if signed by the court, could be interpreted in the United States or elsewhere as a factual finding by a federal district court. *See* ECF 79-1 at 4. For example, the proposed factual finding fails to mention that Defendant holds a personal ownership stake of over 66% in Ethos Brazil, and might lead an outside observer to conclude that Defendant has no ownership or control over Ethos Brazil. Moreover, the proposed letter finds that "Mayra Fonseca Couto Souza Carmo ran Ethos Capital Brazil Ltda," but Defendant has not presented evidence of that to be true.

DATED: November 15, 2024

Respectfully submitted,

TARA K. McGRATH
United States Attorney

/s/ *E. Christopher Beeler*
E. CHRISTOPHER BEELER
CARL F. BROOKER, IV
Assistant United States Attorneys

---

Defendant's attachment to ECF 64 which states it is a "Record of Mayra Couto's Pending Lawsuit in Brazil Against Ethos." ECF 64-1. However, the document (1) was not translated into English (2) appears to be from escovador.com which seems to be an unofficial website which aggregates legal filings and is not an official court record, and (3) appears to lack any substantive information about the litigation itself and is only a docket printout.