WILLIAM SMALL, III (State Bar No. 253443)
SMALL LAW PC
402 W. Broadway - Suite 1720
San Diego, CA 92101
Telephone: (619) 430-4793
Will@smalllawcorp.com

DAVID B. NEWMAN (*admitted pro hac vice*)
SILLS CUMMIS & GROSS PC
101 Park Avenue - 28th Floor
New York, NY 10178
Telephone: (212) 500-1532
Fax: (212) 643-6500
DNewman@sillscummis.com

Attorneys for Victim Link Conexión Aérea, S.A. de C.V.

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>CARLOS MANUEL DA SILVA SANTOS (1),<br><br>Defendant. | Case No. 3:23-cr-02507-RSH<br><br>**RESPONSE BY VICTIM LINK CONEXIÓN AÉREA, S.A. DE C.V. TO DEFENDANT'S RESPONSE TO USA'S MOTION FOR RESTITUTION**<br><br>Hearing Date: July 17, 2025<br>Hearing Time: 1:30 PM<br><br>Judge: Hon. Robert S. Huie |

## INTRODUCTION

Pursuant to the Mandatory Victim Restitution Act ("MVRA"), 18 U.S.C. § 3663A, the Victim and Witness Protection Act, 18 U.S.C. § 3664 (d)(5), and the Crime Victims' Rights Act, 18 U.S.C. §§ 3771(a); 3771(d)(3), Link Conexión Aérea, S.A. de C.V. ("TAR") respectfully request that the Court enter an order of restitution that requires defendant, Carlos Manuel da Silva Santos ("Santos"), to provide restitution to TAR in the amount of $3.9 million. There is good cause for this request.

The Plea Agreement between Santos and the Government expressly identifies three entities as victims of the wire fraud conspiracy to which Santos has pled guilty. Dkt. 121 at p.19 ¶B.ii. The Government informed TAR that only the domestic victims were identified in the Plea Agreement but that there were multiple other victims. TAR is one of such victim. There is no dispute that TAR is a victim of Santos' wire fraud scheme or that it suffered a multi-million injury as a result of his wire fraud scheme. Any restitution order should require Santos to pay $3.9 million in restitution to TAR.

As explained in the document attached hereto as Exhibit A (TAR's Victim Impact Statement) TAR provided collateral worth $3.9 million to obtain a loan from Santos' company, Ethos Asset Management, ("Ethos"). However, Ethos did not provide any loan or loan funds to TAR. Thus, as a result of Santos' wire fraud scheme, TAR suffered losses of $3.9 million. As set forth in TAR's Victim Impact Statement, Santos used false financial information, phony testimonial calls, and fraudulent statements, all of which TAR relied upon, to induce TAR to deposit $3.9 million in collateral as consideration for a $50+ million loan. The collateral was deposited, and the loan never materialized. Despite many empty promises to return the collateral, it was never returned.

Therefore, in accordance with the MVRA and CVRA, TAR respectfully requests that the Court enter a restitution order that requires Santos to pay $3.9 million to it. In support of this request, TAR relies upon the Victims Impact Statement which was submitted to the Government on March 26, 2025 (resent April 17, 2025), with a copy to Santos' counsel, and submitted to the victim Notification Service on April 14, 2025.

**FACTS**

1. **Background**

TAR is a Mexican airline founded in 2012, headquartered in Mexico. Currently, it has a presence in fourteen (14) airports in all regions of Mexico. The fleet consists of 12 ERJ-145 jets with coverage in 18 domestic destinations and internationally through charter services covering the USA and the Caribbean, with 26 routes and 3.5 million passengers flown. TAR initially approached Santos/Ethos to obtain financing for flight equipment and assets necessary to the operation of the airline. Throughout the entire process of soliciting TAR and continuing through TAR's collateral deposit of $3.9 million to effectuate the loan transaction, Santos/Ethos used false financial statements, false payment references, false proof of funds, and false press releases, among other things, to fraudulently induce TAR to enter into the loan transaction. All of the statements herein are supported by documents set forth in TAR's Victim Impact Statement. See Exhibit A.

2. **Financial Information**

In anticipation of the financing transaction, on May 25, 2023, Ethos shared several documents by email with TAR. First, was a "Client Information Sheet" which sets forth corporate, banking and brokerage information regarding Ethos. It was signed by Santos, on behalf of Ethos under penalties of perjury on October 1, 2022, together with a picture of Santos' passport. Second, were Financial Statements for Ethos for the periods ending December, 2022 and 2021, naming Hoffman & Associates as Ethos' independent auditing firm and containing an opening letter from Santos as to the "Director's Responsibilities and Approval." The annual financial statement for the year ending 2021 reflects assets of $1.796 billion and net profit of $41.472 million. The annual financial statement for the year ending 2022 reflects assets of $2.214 billion and net profits of $16.886 million. Third, was a series of meeting minutes of the Directors and Shareholders of Ethos; the Certificate of Incorporation; Amended Bylaws of Ethos; and statements of information filed with the California Secretary of State. The <u>only</u> signature that appears on any of these documents on behalf of Ethos is that of Santos.

It remains unclear which of these documents are authentic and which are falsified.

However, given that the Financial Statements show strong liquidity that has been debunked in reality, we can now conclude, after the fact, that these were falsely represented. At the time, TAR relied on these documents to pursue the financing. Furthermore, when TAR requested the opportunity to speak with Ethos' independent auditors, Hoffman & Associates on May 27, 2023, in accordance with "due diligence," the request was denied. Ethos responded that it was "not in our interest to carry such an opportunity cost and to engage with a counter party who is not aligned with us. …TAR is seeking an investment, but we have no need or desire to oblige TAR to receive our money."

As part of Ethos' attempt to fraudulently induce TAR to enter into the transaction, at the request of TAR, Ethos submitted monthly bank statements for its account at Citibank, for the periods June 23 – July 22, 2022, July 23 – August 19, 2022, August 20 – September 22, 2022 and September 23 – October 24, 2022. These statements reflect balances between $103,102,600.58 and $105,894,802.05. Although TAR had no reason to question the balances at the time, we now know that the balances and the monthly statements were counterfeit.

During in-person interviews with Ethos representatives, they claimed Ethos was approximately twelve (12) years old with assets of approximately $50 billion. When challenged on this matter, they stated that the reference was to another entity within their group but insisted that additional information was unnecessary for a transaction of the scale being discussed. "Respectfully, we do not need to prove or justify more than $2 billion USD for a project of $50 million USD, as you will appreciate this is sufficient."

3. **Testimonial Calls**

On May 25, 2023, Elias Achilleos, Chief Risk Officer of Ethos, facilitated contact between TAR and John Coppolino, Chief Executive Officer of Tygrus LLC, as well as Kendall Chow,

Chief Executive Officer of Havo Inc. The intent was to provide first-hand testimonials regarding the integrity, professionalism, and success of transactions conducted between Ethos and their respective companies. Both interviews were conducted, and the positive feedback received from these individuals, on behalf of their companies, influenced TAR's decision to proceed with the financing transaction with Ethos.

It remains unclear whether the transactions with these companies were actually carried out and whether the testimonials were genuine. Nevertheless, since both companies were part of the process that Ethos used to induce prospective targets to enter into agreements, the only conclusion that can be reached is that this was part and parcel of the larger scheme to defraud.

Similarly, Roberto Suarez, an associate at Ethos, offered TAR the opportunity to contact Grupo Consultor Mexicano ("GCM"), a company that allegedly received financing from Ethos to execute a hospital construction project in Mexico. A personal interview was conducted with Erick Celestin Preciado, CFO of GCM, who confirmed that the financing was proceeding in accordance with the terms agreed upon with Ethos. He also mentioned that entities within his business network had successfully engaged with Ethos in the past. Once again, we do not know the veracity of this representation.

As an aside, to the extent that Tygrus LLC, Havo Inc. and Grupo Consular Mexicano did receive funds from Ethos and are obligated to repay those funds, this could be an additional source of funds for restitution to TAR and other victims of the fraudulent conduct of Ethos and Santos.

4. **The Transaction**

Ultimately, Ethos, represented by Santos, and TAR, entered into an agreement, dated June 12, 2023 pursuant to which Ethos was going to provide TAR with financing in an initial amount of $20 million and a secondary tranche of $31.3 million under a subsequent agreement (the "Agreement"). Pursuant to the Agreement, in consideration for the initial phase of the financing,

TAR was required to sign a Pledge Agreement and deposit into a pledge account collateral for repayment of the financing. The Pledge Agreement was signed on June 12, 2023 between Ethos, represented by Santos and TAR which was going to post the $3.9 million collateral (the "Pledge Agreement"). The Agreement was amended on August 4, 2023 to revise certain banking information.

Pursuant to the Agreement and the Pledge Agreement, the collateral, in the amount of $3.9 million, was sent by TAR by wire transfer on June 28, 2023 to Ethos' bank account at Citibank. TAR provided proof to Ethos that the funds pursuant to the Pledge Agreement were sent by email dated June 27, 2023. Nevertheless, Ethos continued to play its games and said that the disbursement schedule for the loan transaction would only be calculated once the collateral funds were received, although they had already been received. Ethos finally acknowledged receipt of the funds on July 4, 2023, and Santos stated that "I will in due course provide you the disbursement schedule" for the first tranche of the loan. It is clear that the funds were received in Ethos' account on June 28, 2023. Finally, on July 4, 2023, Ethos provided TAR with a disbursement schedule with the first disbursement due on August 16, 2023, in the amount of $1,666,666.66.

5. **Promissory Note**

In connection with the transaction, Ethos executed a Promissory Note, dated June 13, 2023, signed by Santos as CEO and Member of Ethos, as a guarantee by Ethos for the repayment of $3.9 million provided as collateral on behalf of TAR, "in case of the transaction of Financing (AGREEMENT NO. EAM-TAR-A-0421-2023) between Ethos Asset Management Inc. and the Project Promoter [defined as TAR] is terminated by default of Ethos Asset Management Inc. and the Margin Value Facility that was extended by the Pledgor to Ethos Asset Management, Inc. is not returned." This document confirmed Ethos and Santos' financial capacity to fulfill the payment obligation in the event of a default by Ethos. Clearly, Santos/Ethos failed to comply with their

obligation, upon Ethos' default under the Agreement.

6. **False Press Releases**

Ethos made false public statements asserting that the Agreement with TAR had been successfully executed, that the operation was funded, and that Ethos was "committed to providing [TAR] significant capital infusion that will continue for several years." As we now know, there was no funding, no real commitment to fund, and absolutely no intention to do so. These claims were totally untrue and adversely impacted TAR's stakeholders. Upon learning about the alleged completion of the financing transaction, stakeholders of TAR demanded payments, investments, and the execution of activities related to the investment project, believing the false information to be accurate. This severely impacted the reputation and goodwill of TAR.

7. **Default**

It became obvious shortly after the Agreement and Pledge Agreement were fully executed and the collateral funds were sent to Ethos on June 28, 2023 that Ethos was not going to perform. Pursuant to the Agreement, Ethos was to make its first disbursement of $1,666,666.66 on August 16, 2023. From that point forward, Ethos gave TAR the royal run-around. Santos sent a series of emails continuing through mid-September, 2023 asserting every kind of excuse as to why the first disbursement was not made, including false Fed wire confirmations, reference numbers, and payment documents that were non-existent or falsified, solely for the purpose of misleading TAR into believing that Ethos' funds were transferred to TAR's account in accordance with the Agreement, blaming TAR citing unfounded issues with TAR's accounts and requesting operational explanations to justify their own non-compliance with the Agreement. By letter dated September 12, 2023, TAR confirmed, once again, its bank coordinates. Santos even forged two Funds Transfer Requests from Signature Bank dated April 24, 2023 and September 28, 2023 referencing the Agreement. The original account designated for receiving the funds at HSBC Bank

was confirmed to be in perfect condition for the deposit by top-level bank executives. However, that account was later replaced with a different one in the United States just to satisfy Ethos. Despite this change, Ethos was unable to transfer the funds to either account.

After many weeks of frustration and Ethos' continued breach of its obligations, TAR sent a Notice of Default on September 15, 2023. By email dated October 17, 2023, TAR, having already sent a Notice of Default, sent an email to Ethos reiterating the default under the Agreement and demanding the return of the $3.9 million collateral. Having received no response, TAR once again, on October 24, 2023, sent an email to Ethos confirming that Ethos had not cured its default and reiterated the termination of the Agreement and once again demanded the return of the $3.9 million of collateral funds.

In what cannot only be described as a non-sensical response, Ethos sent a letter to TAR dated October 25, 2023 claiming that it was not in default because TAR did not provide correct wire instructions for the return of the collateral, and was the subject of adverse media coverage. As a result, Ethos asserted that it was "no longer interested in continuing this transaction with a counter party whom we cannot continue to trust in a long-term financing partnership and to remain exposed to US$20, 000,000.00."

Despite the foolhardy comments by Ethos, it stated as follows:

> We therefore accept your repudiation of the Agreement, and we accept the release of the collateral with the return of the Margin Value Facility to allow us to amicably and this transaction without further financial losses and reputational damage.

Clearly recognizing its exposure, Ethos offered a Settlement Agreement in draft "for the process of termination."

The draft Settlement Agreement was tendered on October 25, 2023. The draft provided, amongst other things, that Ethos return the $3.9 million collateral to TAR within thirty (30)

-8-

business days after signing the Settlement Agreement. TAR returned the draft on November 7, 2023 with suggested revisions, the most important being return of the collateral funds within twenty-four hours of execution of the Settlement Agreement. In usual fashion, Ethos rejected this proposed revision providing a typical Ethos explanation that the collateral funds were deposited into a sub account which, according to Ethos, only permitted five withdrawals a month.

In addition to the charade regarding falsified bank information to avoid compliance with its funding obligations, Ethos also attempted to damage TAR's reputation and suggested that some postings on the internet about TAR's customer service would be a compliance issue for Ethos. Santos expressed concern in an email dated October 11, 2023 that a blog with ninety (90) followers was problematic because "our name is being associated with some negative practices. that potentially can put your entire operation in question." This resulted in TAR providing an explanation to Ethos' bank, Signature, by letter dated October 11, 2023. Noteworthy is the fact that Ethos previously provided copies of counterfeit Funds Transfer Requests to TAR on August 24, 2023, and September 28, 2023, prior to the internet issue. Clearly, this was not a Signature Bank issue. The use of Signature Bank was a hoax and just further part of the fraud.

Having heard nothing further from Ethos regarding the purported Settlement Agreement, TAR retained Sills Cummis & Gross P.C. ("SCG") to conclude the Settlement Agreement. By email dated November 29, 2023, SCG wrote to various persons at Ethos indicating that TAR wanted to conclude this settlement promptly and enclosed a re-draft of the Settlement Agreement. No response was received. SCG then wrote to Signature Bank's successor on November 29, 2023 (copying Santos and Ethos) to put the bank on notice that the money in Ethos' account, if real at all, should be held until there was a fully executed Settlement Agreement. It was then that TAR was informed that the funds were frozen and Santos was arrested in connection with his fraudulent scheme. At that time, counsel for TAR contacted the Government.

## RESPONSE TO DEFENDANT'S ARGUMENTS

Defendant's Consolidated Response [Doc. No. 166] purports to suggest that TAR, together with every victim other than those set forth in the Plea Agreement should not be entitled to restitution for various reasons which will be dealt with herein. Yet at least with regards to TAR, Santos does not deny that TAR was a victim of the fraud which is the basis of his Plea Agreement.

"Interesting" is probably the most politically correct word to use to describe how Santos attempts to avoid restitution to all the victims of his fraud to the tune of $100 million. As to TAR, none of the factors cited by Santos as defenses to restitution apply. In fact, TAR submitted a 200+ page Victim Impact Statement (See Ex. A) which demonstrates, by documentary evidence alone, that Santos submitted false and misleading documents to TAR, that TAR relied on those documents, that TAR deposited collateral ($3.9 million) at the request of Santos in reliance on the documents into a bank in the U.S. in consideration for a loan that Santos (Ethos) never made, that Santos promised to return the collateral, and never did.

Santo does not, because he cannot, rebut any of these facts.

- **Proximate Cause**. Although Santos claims there is no proximate cause, the timeline set forth in the attached documentation unequivocally demonstrates that TAR deposited the collateral only after it received all the assurances from Santos as to the financial viability of Ethos to consummate the transaction. It would be foolhardy to suggest, and Santos does not, that TAR's loss resulted from anything other than the fraudulent conduct of Santos.

- **Fraudulent Inducement**. In footnote 3 of Defendant's Consolidated Response [Doc. No. 166], Santos concedes that the Government asserts that TAR is one of the entities claimed to have been fraudulently induced. Santos does not deny that. Further, the documentation is clear that TAR did not deposit its collateral until after receiving from Santos all of the fraudulent documentation which induced TAR into the transaction.

- **False Statements**. Santos states that some companies did not receive any false statements before depositing the collateral. Santos does not suggest that TAR was one of those companies. In fact, the Victim Impact Statement makes clear that Santos sent TAR various fraudulent documents prior to TAR's depositing its collateral.

- **Reliance**. Santos assets that there is "virtually" no evidence that companies relied upon the fraudulent documents and statements. This is just another example of Santos throwing a lot of stuff against the wall hoping something will stick. The Court can surely take notice of the timelines pursuant to which Santos, who TAR did not know beforehand, first sent financial materials regarding Ethos' ability to make the loan, then a loan and subsidiary agreements to execute, that TAR relied on the information that Santos sent. That being said, if the Court would like an affidavit from TAR confirming its reliance, TAR is prepared to submit such a document.

- **Timing of Documents**. Santos' statement that the Government's submission does not indicate when TAR received bank statements from Santos, is debunked by TAR's Victim Impact Statement which provides a timeline including cover emails with the documents.

- **Venue**. Santos asserts there is an insufficient nexus to the jurisdiction to qualify for restitution. Santos executed his fraud from the United States. Ethos' offices were in California. The fraudulent documents were sent from California. The collateral demanded from Santos was deposited in a U.S. bank at the direction of Santos. The letterhead that Santos used has a California address and phone number (202-374-5023). Ethos is a California entity with a U.S. tax number (EIN 85-1564558), the loan and collateral agreements are, by their terms, to be interpreted pursuant to New York law, Ethos' bank account was maintained at Citibank, and the settlement agreement was to be interpreted in accordance with New York law. There can be no doubt that the contacts

- **Admission Against Interest**. Santos fails to inform the Court that Ethos offered a Settlement Agreement in draft "for the process of termination," of the deal and Ethos returning the

$3.9 million collateral. The draft provided, amongst other things, that Ethos return the $3.9 million collateral to TAR within thirty (30) business days after signing the Settlement Agreement. TAR returned the draft with suggested revisions, the most important being return of the collateral funds within twenty-four hours of execution of the Settlement Agreement. In usual fashion, Ethos rejected this proposed revision providing a typical Ethos explanation that the collateral funds were deposited into a sub account which, according to Ethos, only permitted five withdrawals a month. No response was received and Signature Bank, which was purportedly holding the funds was put on notice that the money in Ethos' account, if real at all, should be held until there was a fully executed Settlement Agreement. It was then that TAR was informed that the funds were frozen and Santos was arrested in connection with this fraudulent scheme.

## CONCLUSION

For the foregoing reasons, TAR respectfully requests the Court to issue an order of restitution directing Santos to pay $3.9 million in restitution to TAR.

Date: July 14, 2025

                              Respectfully Submitted

                              SILLS CUMMIS & GROSS P.C.

                              */s/ David B. Newman*
                              David B. Newman

                              SMALL LAW P.C.

                              */s/ William Small*
                              William Small

                              *Attorneys for Victim*
                              *Link Conexión Aérea, S.A. de C.V.*