**Palomares Starbuck & Associates, LLP**
Lorenzo J. Palomares Starbuck, California Bar No.: 213648
66 W. Flagler Street, Suite 601
Miami, Florida 33130
Email: palolaw2@gmail.com

Attorney for Victim
**EXSAN de México SA de CV**

UNITED STATES DISTRICT COURT CALIFORNIA
SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICAN<br><br>Plaintiffs,<br><br>v.<br><br>CARLOS MANUEL DA SILVA SANTOS.<br>Defendants, | Case No.: 23-CR-2507-RSH<br><br>MOTION FOR REHEARING OR RECONSIDERATION AS TO RESTITUTION<br><br>Date:<br>Time:<br><br>The Honorable Robert S. Huie |

Pursuant to Pursuant to the Mandatory Victim Restitution Act ("MVRA"), 18 U.S.C. § 3663A, and FRCP Rule 59 Victim EXSAN de Mexico SA de CV ("EXSAN") respectfully requests that this Court grant a Motion for Rehearing or Reconsideration as to EXSAN's right to receive restitution in the amount of $3,250,000.00. As explained below, there is good cause for this request.

**Background**

As this Court is aware, Carlos Manuel da Silva Santos used ETHOS ASSET MANAGEMENT ("ETHOS") and network of co-conspirators to perpetrate a massive fraud, totally in excess of one hundred million dollars.

As with other victims that appeared before this Court, Mr. Sanchez Navarro, the principal of

EXSAN, was introduced to Ethos by a "Broker", one Mr. Roberto Suarez Espinoza ("Espinoza"). At the time, EXSAN was going thru a difficult financial time, as a change in labor laws in Mexico negatively affected its business model. On October 27, 2022, Espinoza sent Sanchez Navarro information about Ethos and requested information regarding EXSAN in order to "start the funding process with Ethos." At this point, and in an obviously attempt to comply with Mexican expectations of corporate formalities, ETHOS sent a letter of authority nominating Espinoza as an ETHOS representative. A true and correct copy of the authority letter is attached as Exhibit 1. Espinoza explained that "Carlos Santos" was a genius who had made a unique algorithm that allowed him to obtain outsized returns on the markets.

Commencing February 2023, several individuals alleging that they were part of ETHOS, including Santos, sent numerous official looking "Know Your Customer" documents to EXSAN. Santos was always copied in each email. A true and correct copy of several of these documents are attached as Exhibit 2, Composite.

Particularly, and relevant to this Court's decision to grant a rehearing, is that between January 2023 and February 2023, Espinoza sent through WhatsApp and email two versions of the Ethos Business Profile Document presentation, which contained false representations as to the amounts under management by Ethos, a statement that over 23 banks had allocated lines of credit to Ethos for its transactions, and that Ethos had billions under management. This profile is an ETHO's produced documents that were provided to Mr. Sanchez Navarro and also found on the ETHO's website and in the LinkedIn profile of Defendant Santos and ETHOS. It was part of a package of official looking documents that ETHOS used to perpetrate its fraud. Additionally, Mr. Sanchez Navarro received a "Pre-Approval Credit & Risk Letter" from ETHOS. True and correct copies of these Documents are attached as Exhibit 3, Composite. The profiles and the "business model" presented within was referred to and used in later meetings. Unfortunately for Mr. Sanchez Navarro and EXSAN, and in reliance of the many representations made by Santos, on July 27, 2023, EXSAN signed an agreement with ETHOS. A true and correct copy is attached as Exhibit 4.

As Mr. Sanchez Navarro was proceeding with executing the documentation and creating the structure asked for by ETHOS, the pace of emails from Defendant Santos and his co-conspirators increased. Specifically, one Mr. Leandro Fernandes increased the number and frequency of emails trying to quickly close the deal. A true and correct copy of a chain of Emails is attached as Exhibit

5, composite. (This exhibit is an Email chain, and thus the oldest email appears last).

It's important to note that Defendant Santos was copied in every email and initiated two emails in this chain. (Pages 1, 2, Exhibit 5). Of particular importance to this Court's determination of this issue is the email sent by Defendant Santos on September 16th, 2023, at 11:08, wherein Santos is asking Mr. Sanchez Navarro about the funds, with the wording at the end "Please work with us to guarantee that after so long we don't lose the deal." (Exh. 5, Page 2).

This timing coincides with the default by ETHOS of its "deal" with Beyond Limits Inc.("Beyond") In fact, Beyond had served ETHOS with a notice of default in August 2023, and subsequently in September 2023 it defaulted on a re-negotiated workout with Beyond. ETHOS knew that it was going to be sued and potentially shut down – or it would be outed publicly and its deal with EXSAN would fall.

As this Court is aware, in July 2023 Santos made repeated representation to the principal of Sector Resources (Sector) that it would be wiring its first Tranche payment on July 20, 2023. Santos failed to do so and instead engaged in a series of misrepresentations to Sector as to the status of the wire. By August 2023, Ethos and Santos knew fully well that they were about to be sued and outed.

Thus, the increased frequency of the request to close the deal and request to wire Mr. Sanchez Navarro's funds were done fully with the intent of defrauding Mr. Sanchez Navarro and EXSAN.

Mr. Sanchez Navarro caused five million dollars to be transferred to an account opened for EXSAN at EFG Capital, a private wealth management company in Florida. On September 29th, 2023, $3,250,000.00 were transferred to an Ethos controlled account in Signature Bank from an EXSAN controlled account. From there, Santos took the funds.

The timeline appearing below, and the attached evidence, fully show that EXSAN is a victim in this case.

| **Emails (ETHOS y EXSAN)** | **Events with Other Victims** |
|---|---|
| 7/20/23 Updated Agreement Sent [Pg. 9 Exh. 5] | ETHOS failed to tender payment as per its Sector Agreement (Sector Complaint Par. 24, Exh. 6) |
| | August 17, Santos admits to Sector that it's in Default. (Sector Complaint Par. 44, Exh. 6) |
| | August 2023 BEYOND LIMITS serves |

| | |
|---|---|
| | default notice on ETHOS. (Beyond Complaint Par. 13, Exh. 7) |
| 09/04/2023    Ask for Feedback with a deadline of Sept 6th [Pg. 8 Exh. 5] 09/04/23 Email asking that Sanchez Navarro respond ref Deadline email [Pg. 7 Exh. 5] | Sometime in September, ETHOS defaults on a renegotiation with Beyond. (Beyond Complaint Par. 14, Exh. 7) |
| 09/05/23 Sanchez Navarro Confirms email reference deadlines [Pg. 6 Exh. 5] | |
| 09/05/23 ETHOS asks "Please confirm time Schedule to deposit funds" [Pg. 5 Exh. 5] | |
| 09/05/23 Sanchez Navarro responds as to Timeline [Pg. 4 Exh. 5] | |
| 09/09/23 Email asking to confirm wire as 'This is crucial for the timeline of the deal" [Pg. 3 Exh. 5] | |
| 09/16/23 Santos sends email pressuring and says, "Please work with us to guarantee that after so long we don't lose the deal." [Pg. 2 Exh. 5] | |
| | September 19, 2023, Beyond serves ETHOS with a Notice of Default. Exhibit 8. |
| On September 23, 2023, EXSAN sent 3,250,000 Dollars to ETHOS | |
| 09/26/2023 | Sector notified ETHOS that it is in Default. (Sector Complaint Par. 58, Exh. 6) |

The timeline set forth above clearly shows that ETHOS had no intention of complying with its contractual obligations and that it would in fact steal the funds.

**Proximate Cause.** Santos was the proximate cause. Mr. Santos was involved in several conversations, copied in all of the emails, made the false representations, and was the critical component of the fraud.

**Reliance.** EXSAN relied on the repeated representations as to the financial strength of ETHOS, and the ability of Santos to somehow beat the market and ensure that the funds would be provided. These were the key representations that were material to EXSAN and Mr. Sanchez Navarro.

3

**Impossibility of Completion.** While the government's plea agreement set forth that some of the financing or deals that ETHOS had engaged did take place, the timeline in this case makes it impossible, since ETHOS was on the verge of having account seized, having defaulted in a series of contracts.

**This Information had been Provided to the Government**

The attached information had been provided to the Government well in advance of the restitution hearing. First, an introductory letter was sent to the Government setting out these facts on June 24, 2024. Afterwards, on two separate occasions counsel for EXSAN sent all of the email correspondence between EXSAN and ETHOS, as well as the other co-conspirators, with an attached spreadsheet identifying each. The Emails and exhibits were requested a second time allegedly to prepare for the restitution hearing and provided again. Attached as Exhibit 9 is a true and correct copy of the Email requesting the information and the email confirming its receipt by the Government.

**Grounds for the Motion**

EXSAN and Mr. Sanchez Navarro entrusted that all of the above information had been provided to the Government well before the hearing. Mr. Sanchez Navarro was there only to observe, and not ready to testify. Counsel for EXSAN advised Beeler that Mr. Sanchez Navarro would attend personally. It was only when counsel for Mr. Sanchez Navarro heard that the Court had significant reservations as to the Government's Affidavit and pleading filed by the Government that counsel for EXSAN decided to call Mr. Sanchez Navarro to testify. Mr. Sanchez Navarro, however, did not have the use of an interpreter, as his testimony was not expected. Counsel was simply not prepared to set forth the case at the time, as it was relying on the Government. This is not the fault of the party that the law intents to protect – the victim.

**MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR REHEARING**

**I. Introduction**

This memorandum of law is submitted in support of the motion for rehearing under the Mandatory Victim Restitution Act (MVRA) and the Federal Rules of Civil Procedure (FRCP) in the Ninth Circuit jurisdiction. The motion seeks to address errors of law or fact that the court may have overlooked or misapprehended in its prior ruling. The Ninth Circuit permits motions for reconsideration in criminal cases, and such motions are reviewed under the standards set forth in

Federal Rules of Civil Procedure 59(e) and 60(b) United States v. Lopez-Ontiveros, 2021 U.S. Dist. LEXIS 9810, United States v. Amezcua, 2015 U.S. Dist. LEXIS 117214, , .

**II. Legal Standard for Motions for Rehearing**

The Ninth Circuit has recognized that while the Federal Rules of Civil Procedure do not explicitly provide for motions for reconsideration in criminal cases, such motions may still be filed. Courts in the Ninth Circuit generally review these motions under the standards articulated in Rule 59(e) (motion to alter or amend a judgment) and Rule 60(b) (relief from a judgment or order) of the Federal Rules of Civil Procedure United States v. Lopez-Ontiveros, 2021 U.S. Dist. LEXIS 9810, United States v. Amezcua, 2015 U.S. Dist. LEXIS 117214, , . Rule 59(e) allows for reconsideration based on newly discovered evidence, clear error, or an intervening change in controlling law, while Rule 60(b) provides relief for reasons such as mistake, inadvertence, surprise, or excusable neglect. Arizona Civ. Liberties Union v. Dunham, 112 F. Supp. 2d 927, Shlesinger v. Bank of Am., N.A., 2012 U.S. Dist. LEXIS 102030.

As explained above, EXSAN was caught by complete surprise when it realized that the Government had inexplicably declined to use the evidence that it had provided since 2024. EXSAN submits that the fact meet the burden.

**III. Applicability of the MVRA and Procedural Standards**

The MVRA mandates restitution for victims of certain crimes and provides specific procedural requirements for determining and amending restitution orders. United States v. Lemoine, 546 F.3d 1042, United States v. Bondaruk, 2022 U.S. App. LEXIS 35403. Under the MVRA, if a victim discovers additional losses after the initial restitution order, they may petition the court for an amended order within 60 days of discovering those losses, provided they show good cause for the failure to include such losses initially 18 USCS § 3664, United States v. Moreland, 604 F.3d 1058. This procedural flexibility aligns with the Ninth Circuits approach to post-judgment motions for reconsideration, which allows courts to address errors or omissions in restitution orders under the standards of Rule 59(e) and Rule 60(b) United States v. Lopez-Ontiveros, 2021 U.S. Dist. LEXIS 9810, United States v. Amezcua, 2015 U.S. Dist. LEXIS 117214, , .

### IV. Timeliness and Tolling Effect of Motions for Rehearing

Timely filing of a motion for rehearing is critical, as it may toll the time for filing a notice of appeal. In the Ninth Circuit, a timely motion for rehearing suspends the finality of the judgment, pending the courts determination of whether the judgment should be modified USCS Fed Rules App Proc R 4. This principle ensures that parties have an opportunity to seek correction of errors before the judgment becomes final and appealable. This Motion was filed within the time limits prescribed by the applicable rules, such as Rule 59(e) or Rule 60(b) United States v. Lopez-Ontiveros, 2021 U.S. Dist. LEXIS 9810, United States v. Amezcua, 2015 U.S. Dist. LEXIS 117214,

### CERTIFICATE OF SERVICE

I HEREBY CERTIFY on Tuesday July 29, , 2025 I electronically filed the foregoing document with the Clerk of the Court using CM/ECF which will serve a copy to all parties of record.

Dated: July 29, 2025          **Palomares Starbuck & Associates, LLP**

                              By: _____

                              Lorenzo J. Palomares Starbuck
                              Attorney for Plaintiffs
                              EXSAN De Mexico, SA de CV
                              and Enrique Sanchez Navarro