UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                              Plaintiff,<br><br>v.<br><br>CARLOS MANUEL DA SILVA SANTOS (1),<br><br>                              Defendant. | Case No.: 23-cr-2507-RSH<br><br>**ORDER DENYING MOTION FOR RECONSIDERATION**<br><br>[ECF No. 174] |

Pending before the Court is a motion for reconsideration filed by third-party Exsan de Mexico SA de CV ("Exsan"). ECF No. 174. As set forth below, the motion is denied.

## I.    BACKGROUND

On May 16, 2025, the Court sentenced defendant Carlos Manuel Da Silva Santos, pursuant to his guilty plea to one count of wire fraud conspiracy and one count of aggravated identity theft, to a term of 87 months in custody followed by three years of supervised release. ECF No. 154. The offenses were committed in connection with Santos's role as chief executive officer of California-based Ethos Asset Management, Inc. ("Ethos"). *See* ECF No. 121 at 3-7 (factual basis set forth in plea agreement). At the sentencing hearing, the Court set a briefing schedule and an evidentiary hearing for determination of restitution. ECF No. 154.

|   |   |
|---|---|
| 1 | On July 17, 2027, the Court held the restitution hearing. ECF No. 172. At that |
| 2 | hearing, the government sought restitution on behalf of 25 victims, including 3 victims for |
| 3 | whom the plea agreement specifically addressed restitution. *See* ECF Nos. 156, 156-1. One |
| 4 | of the victims not specifically mentioned in the plea agreement was Exsan, for whom the |
| 5 | government was seeking a restitution award of $3,250,000. ECF No. 156-1. Unlike most |
| 6 | of the other parties seeking restitution, Exsan had not filed a victim impact statement prior |
| 7 | to sentencing. *See* ECF Nos. 140, 147.  However, in advance of the restitution hearing, the |
| 8 | government and the defense addressed Exsan's claim in their respective restitution briefs. |
| 9 | *See* ECF Nos. 156 at 8 (government brief), 156-3 ¶ 17 (agent declaration), 156-14 |
| 10 | (exhibits), ECF No. 166 at 4 (defense brief). |
| 11 | At the restitution hearing, Exsan's principal, Mr. Navarro, was in attendance |
| 12 | accompanied by Exsan's counsel. Also present were attorneys for two other victims. The |
| 13 | Court inquired whether the government, the defense, or any of the attorneys for the victims |
| 14 | wished to present evidence at the hearing. ECF No. 179 at 12-14. The government did not |
| 15 | call any witnesses, but Exsan's counsel indicated he wanted to call Mr. Navarro to testify. |
| 16 | *Id.* at 15. Accordingly, Mr. Navarro was sworn in as a witness, and examined by Exsan's |
| 17 | counsel, by the government, and by the defense. *Id.* at 15-28. Later in the hearing, the Court |
| 18 | heard argument on each of the victims' restitution claims, including that of Exsan. The |
| 19 | government, the defense, and Exsan each argued their respective positions. *Id.* at 85-95. |
| 20 | No party requested the opportunity to submit further evidence or argument, or sought to |
| 21 | continue the hearing. Following argument, the Court denied Exsan's claim based on |
| 22 | inadequate evidence. *Id.* at 95-96. |
| 23 | On July 18, 2025, judgment against Defendant was entered. ECF No. 173. The |
| 24 | judgment included a total of $29,766,829 in restitution, payable to six identified victims. |
| 25 | *Id.* |
| 26 | On July 29, 2025, Exsan filed a motion for reconsideration pursuant to Rule 59 of |
| 27 | the Federal Rules of Civil Procedure. ECF No. 174. The Court directed the government |
| 28 | and the defense to respond. ECF No. 176. On August 20, 2025, the government and the |

defense timely filed briefs articulating their respective positions. ECF Nos. 180, 181. The government urges that Exsan's motion be granted, and Defendant argues that the Court lacks jurisdiction to hear Exsan's motion.

## II.     DISCUSSION

The Court addresses its authority to reconsider the restitution portion of the judgment in this criminal case. The Ninth Circuit has explained:

> [A] district court does not have inherent power to resentence defendants at any time. Its authority to do so must flow either from the court of appeals mandate under 28 U.S.C. § 2106 (1982) or from Federal Rule of Criminal Procedure 35.

*United States v. Handa*, 122 F.3d 690, 691 (9th Cir. 1997) (quoting *United States v. Minor*, 846 F.2d 1184, 1187 (9th Cir. 1988)). The Ninth Circuit further explained that 28 U.S.C. § 2255 "expressly vests some power in the district court" to resentence a defendant. *Id.* Other statutes likewise expressly confer power on a district court to modify a sentence or aspects thereof. For example, a federal detainee may seek a sentence reduction from a district court pursuant to 18 U.S.C. § 3582(c).

The statute governing the procedure for seeking criminal restitution, 18 U.S.C. § 3664, provides some basis for modifying a restitution order. Section 3664(d)(5) provides for a redetermination of a victim's losses that are discovered subsequent to a restitution hearing, in certain circumstances:

> If the victim's losses are not ascertainable by the date that is 10 days prior to sentencing, the attorney for the Government or the probation officer shall so inform the court, and the court shall set a date for the final determination of the victim's losses, not to exceed 90 days after sentencing. *If the victim subsequently discovers further losses, the victim shall have 60 days after discovery of those losses in which to petition the court for an amended restitution order.* Such order may be granted only upon a showing of good cause for the failure to include such losses in the initial claim for restitutionary relief.

18 U.S.C. § 3664(d)(5) (emphasis added). Section 3664(k) also allows a district court to adjust a previously imposed payment schedule upon notification of a material change in

1  the defendant's economic circumstances.[1]

2  Here, Exsan's motion is not based on a statute or a criminal rule, but recites that it is based on Rule 59 of the Federal Rules of Civil Procedure. ECF No. 174 at 1. Exsan asserts that "[t]he Ninth Circuit has recognized that while the Federal Rules of Civil Procedure do not explicitly provide for motions for reconsideration in criminal cases, such motions may still be filed," and contends that the standards set forth in Rules 59(e) and 60(b) apply. ECF No. 174 at 5. Exsan relies on two district court decisions, *United States v. Lopez-Ontiveros*, No. 15-CR-575-GPC, 2021 WL 165037 (S.D. Cal. Jan. 19, 2021), and *United States v. Amezcua*, No. 1:93-CR-5046-AWI-1, 2015 WL 5165235 (E.D. Cal. Sept. 2, 2015). In each of those cases, the courts addressed reconsideration of the court's denial of a motion—specifically, a motion for sentence reduction pursuant to 18 U.S.C. § 3582(c)—rather than reconsideration of the defendant's sentence. *See Lopez-Ontiveros*, 2021 WL 165037, at *1-2; *Amezcua*, 2015 WL 5165235, at *1-2. Both cases relied on a footnote contained in the Ninth Circuit's decision in *United States v. Martin*, 226 F.3d 1042, 1047 n.7 (9th Cir. 2000). That case, in turn, involved a motion to reconsider a district court's order granting a petition under 28 U.S.C. § 2255, rather than reconsideration of a defendant's sentence. *Martin*, 226 F.3d at 1048-49. None of the cases cited by Exsan, or cited in the cases cited by Exsan, or cited by the Ninth Circuit in *Martin*, provide that a district court may revise a criminal sentence pursuant to Federal Rules of Civil Procedure 59 or 60. *See United States v. Clark*, 984 F.2d 31, 33 (2d Cir. 1993) (addressing motion to reconsider denial of Section 2255 petition); *United States v. Mendez*, No. CR-07-11 MMM, 2008 WL 2561962, at *1 (C.D. Cal. June 25, 2008) (addressing motion to reconsider district court's denial of motion to compel discovery).

While Exsan cites to Rule 59 as the basis for its motion, the specific grounds put forward by Exsan for its motion are under Federal Rule of Civil Procedure 60(b). ECF No.

---

[1] This order does not purport to enumerate every statutory basis for modifying some aspect of a criminal sentence.

4

174 at 1, 6. Federal Rule of Civil Procedure 60(b) allows a district to grant relief from a final judgment for "mistake, inadvertence, surprise, or excusable neglect," Fed. R. Civ. P. 60(b)(1). Here, Exsan argues that it "was caught by complete surprise when it realized that the Government had inexplicably declined to use the evidence that [Exsan] had provided since 2024." ECF No. 174 at 6. The Court is sympathetic to the reason given by Exsan for bringing its motion to reconsider, and the fact that Exsan undisputedly provided funds to Ethos and never received those funds back, much less the loan Exsan was promised. However, the Court has been presented with no valid basis to conclude that it has authority to hear this motion. Exsan does not argue newly discovered losses pursuant to 18 U.S.C. § 3664(d)(5).

The government's brief argues that the Court should award Exsan $3,250,000, but does not address the legal authority for Exsan's motion or the Court's authority to make such an award. ECF No. 181. The Court notes that, if the theory underlying Exsan's motion were accepted, it would seemingly allow defendants in criminal cases to routinely seek reconsideration of a sentence for any number of reasons under Federal Rules of Civil Procedure 59 or 60, such as counsel's mistake or surprise at the time of sentencing (Rule 60(b)(1)), the discovery of mitigating evidence after sentencing (Rule 60(b)(2)), or "any other reason that justifies relief" (Rule 60(b)(5)). Motions to reconsider based on surprise, mistake, or newly discovered evidence (among other bases) could be filed up to a year after entry of the criminal judgment. *See* Fed. R. Civ. P. 60(c)(1). This Court does not agree that those civil rules apply here.

The Court declines to *sua sponte* construe Exsan's motion as a motion pursuant to Rule 35(a) to "correct a sentence that resulted from arithmetical, technical, or other clear error." Fed. R. Crim. P. 35(a). Exsan's motion does not invoke Rule 35. The government's brief does not mention Rule 35 either. While Exsan disagrees with the Court's conclusion that no restitution was warranted, Exsan does not identify or establish "clear error" on the part of the Court. Exsan's motion attaches numerous exhibits, but authenticates none of them; makes conclusory assertions of reliance, but fails to support them with a declaration

from Mr. Navarro or anyone with personal knowledge; and credibly asserts that Mr. Navarro was not prepared to testify at the restitution hearing, but does not address how that testimony supports or fails to support Exsan's motion. Additionally, Defendant argues that the time to make such a correction pursuant to Rule 35 has lapsed. *See* ECF No. 180 at 6 (citing *United States v. JDT*, 762 F.3d 984, 1005 (9th Cir. 2014)). Just as the government and the victims have an interest in the finality of the judgment, so too does Mr. Santos.

The Court briefly addresses the arguments made by the government in its responding brief, in which the government advances several theories in arguing for restitution for Exsan. First, the government argues:

> All the evidence demonstrates that Exsan was harmed "as a result of the commission" of Defendant's criminal scheme. After all, had Ethos been an entirely legitimate concern, Ethos could have and likely would have repaid Exsan following Defendant's arrest during normal business operations. The fact Ethos has not paid Exsan is proof that Exsan was directly harmed by the crime.

ECF No. 181 at 4. This seems to be a variation of the argument previously advanced by the government that all unpaid creditors of Ethos are entitled to restitution from Defendant, whether or not they were duped. *See, e.g.*, ECF No. 156 at 9 ("Finally, the law supports a finding that *all* borrowers are victims if they entered into project finance agreements, paid collateral, did not receive the benefit of their bargain, and have an actual loss of money due to them."). At the restitution hearing, the Court rejected this theory, noting that "the Government has not provided any authority holding that where a defendant's criminal actions resulted in the defendant's insolvency, all of the defendant's creditors"—such as an unpaid landlord—"thereby become victims entitled to restitution under the Mandatory Victim Restitution Act." ECF No. 179 at 9:5-9. The government's responding brief does

not supply this authority either.² The fact that Exsan is an unpaid creditor does not establish that its losses were the proximate result of Defendant's criminal scheme.

Next, the government argues that Exsan is entitled to restitution because the circumstances under which it lost money—advancing collateral to Ethos pursuant to a project finance agreement—"closely mirror[s] the conduct of the criminal scheme described in Defendant's plea agreement." ECF No. 181 at 5. The plea agreement does in fact recite that some Ethos customers were defrauded out of their collateral. But that plea agreement also recites that "[i]n some instances, SANTOS and his business associates entered into legitimate project financing agreements with clients in the United States and around the world, and disbursed money to those clients to finance projects." ECF No. 121 at 4. Per the language of the plea agreement that the Parties negotiated, one cannot infer, from the fact that a client entered into a project financing agreement with Ethos and thereafter provided collateral pursuant to that agreement, that the agreement was fraudulent.

Finally, the government argues that an Ethos marketing presentation that was furnished to Exsan falsely represented the extent of Ethos' global financing operations; and the government states that, "while irrelevant to the restitution analysis," this "was a materially false statement that induced Exsan into sending Ethos money." ECF No. 181 at 6. For this factual claim, the government relies on documents submitted in Exsan's motion for reconsideration, unauthenticated by any declaration, as well as the assertion contained

---

² The government cites as instructive the First Circuit's decision in *United States v. Chin*, 965 F.3d 41 (1st Cir. 2020). *See* ECF No. 181 at 5. In that case, the jury convicted the defendant of racketeering conspiracy relating to him contaminating pharmaceuticals that his employer sold to hospitals and that thereafter harmed patients. *Chin*, 965 F.3d at 45-46. The First Circuit determined that those patients *might* be victims entitled to restitution—even the defendant's company had not made misrepresentations directly to those patients—if their losses were proximately caused by the defendant's conduct. *Id.* at 59. This case does not support the government's sweeping theory of liability here.

in Exsan's motion that "Exsan relied on the repeated representations as to the financial strength of Ethos." See ECF No. 174 at 3.

At the restitution hearing, the Court denied the majority of the restitution claims based on lack of probative evidence. Despite this, the government continues to rely on unsworn statements by persons whose personal knowledge has not been established. While a statement made by counsel in a motion might emphasize or explain other evidence, it is not itself sufficient evidence to satisfy the government's evidentiary burden of proof by a preponderance of the evidence. The government does not cite any of the testimony that Mr. Navarro actually provided at the restitution hearing.

The theory of inducement—that Exsan was induced to advance collateral by Ethos' false representations—is not "irrelevant to the restitution analysis" as the government now asserts. The government's own restitution brief had argued that Exsan was among a group of victims who "were fraudulently induced by Santos or a criminal co-conspirator to enter project finance loan agreements and sent collateral to Ethos in exchange for financing." ECF No. 156 at 8. The problem with the restitution claim was not lack of relevance but lack of evidence. Indeed, if the government had (for example) offered a declaration from a witness with personal knowledge attesting to Exsan's reliance on a specific misrepresentation made by Defendant, the Court would have found such evidence highly relevant. Instead, the government's restitution brief relied on a declaration by the case agent, attaching a report by the same case agent, in turn summarizing an unsworn interview of Mr. Navarro. See ECF No. 156-3 ¶ 13, 156-14. That interview report did not mention the marketing presentation that is the subject of the government's responding brief; instead, the report referred to Mr. Navarro trusting the representations of two individuals: Roberto Suarez, a broker who worked with Ethos; and Maria Sabrina Orrego, apparently a banker. ECF No. 156-14 at 3 ("Navarro stated he trusted Roberto Suarez's assertions that ETHOS was legitimate.") ("Navarro stated he believed Maria Sabrina Orrego was crucial for them to believe ETHOS was a successful business."). But at the restitution hearing, Mr. Navarro was asked by the defense, "As you sit here today, do you know of anything that Roberto

told you that was false?" and answered "No." ECF No. 179 at 27:19-21. Mr. Navarro was not asked by any party about Ms. Orrego. In short, the government failed to meet its evidentiary burden to show by a preponderance of the evidence that Exsan was entitled to restitution, and the Court finds its arguments for reconsideration unpersuasive.

### III. CONCLUSION

For the foregoing reasons, Exsan's motion for reconsideration [ECF No. 174] is **DENIED**.

**IT IS SO ORDERED.**

Dated: August 25, 2025

*Robert S. Huie*
_____
Hon. Robert S. Huie
United States District Judge

9