UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>Plaintiff,<br>v.<br>CARLOS MANUEL DA SILVA SANTOS, et al.,<br>Defendants. | Case No.: 23-cr-2507-RSH<br><br>**ORDER (1) GRANTING IN PART AND DENYING IN PART MOTION TO VACATE OF NON-PARTY DELPHI STUDIOS 1, LLC, AND (2) MODIFYING ORDER OF FEBRUARY 4, 2026**<br><br>[ECF No. 195] |

Pending before the Court is a motion to vacate this Court's February 4, 2026 order, filed by non-party Delphi Studios 1, LLC ("DS1"). ECF No. 195. The motion is opposed by non-party Greenberg Traurig, LLP ("Greenberg Traurig"), a law firm that at one time represented DS1, and that currently represents non-party EMC Presents Delphi, LLC ("EMC"). ECF No. 203. The United States has also filed a response that provides factual matter and legal authority, without taking a position on whether DS1's motion should be granted. ECF No. 202. DS1's motion is fully briefed. *See* ECF No. 205 (DS1's reply brief).

//

//

# I. BACKGROUND

On May 16, 2025, the Court sentenced defendant Carlos Manuel Da Silva Santos, pursuant to his guilty plea to one count of wire fraud conspiracy and one count of aggravated identity theft, to a term of 87 months in custody followed by three years of supervised release. ECF No. 154. The offenses were committed in connection with Santos's role as chief executive officer of California-based Ethos Asset Management, Inc. ("Ethos"). *See* ECF No. 121 at 3–7.

On July 17, 2025, the Court held a restitution hearing. ECF No. 172. On July 18, 2025, the Court entered judgment. ECF No. 173. The judgment included restitution payable to seven victims, including $7,300,000 payable to DS1. *Id.* at 6. The Parties do not appear to dispute that DS1 was intended to serve as a financing vehicle for an entertainment project; that Andrea Jacobs is and has been its authorized representative; and that since DS1 was defrauded by Ethos, it has ceased operations. *See* ECF No. 203-2 at 273 (victim impact statement by Andrea Jacobs on behalf of DS1 dated Mar. 26, 2025, stating, "[w]ith our collateral lost and no money returned, our company was forced to shut down").

On January 21, 2026, Greenberg Traurig, holding itself out as counsel for both EMC and DS1, filed a "motion for restitution payment," addressing the "pro-rata share of any available restitution to which corporate victim Delphi Studios 1 is entitled." ECF No. 189 at 1. Greenberg Traurig had not previously appeared in the case, but explained that on February 20, 2025, it had submitted a corporate victim impact statement to the prosecution on behalf of DS1. *Id.* at 1–2. Greenberg Traurig's motion attached a copy of that victim impact statement. ECF No. 189-1, Ex. A. The motion submitted financial records to demonstrate that the funds that were lost by DS1, such loss forming the basis of DS1's restitution claim and award, had been furnished to DS1 by EMC for investment with Ethos. *See id.*, Ex. C–E. The motion stated, "[t]here is no dispute that EMC Presents is the entity wholly responsible for the $7.3 million lost by Delphi Studios 1 and defrauded by Defendants Carlos Santos and Ethos Asset Management. Accordingly, the pro-rated share of restitution to which Delphi Studios 1 is entitled properly belongs to EMC Presents as

the victimized party from whom the lost funds originated." ECF No. 189 at 2. The motion sought an order directing that any restitution funds to which DS1 is entitled be paid to "Greenberg Traurig, LLP as counsel to EMC Presents Delphi, LLC." *Id.* at 3.

Upon receipt of the Greenberg Traurig's motion, the Court invited a response from the United States. ECF No. 190. On February 4, 2026, the United States filed a response stating that "[t]he government has no objection to the motion's requested relief on the basis that it is made jointly by the victim and EMC Presents." ECF No. 191 at 1. The same day, the Court granted Greenberg Traurig's motion and issued an order directing payment accordingly. ECF No. 192.

On June 12, 2026, DS1, represented by a different law firm, filed this motion. ECF No. 195. The motion states that pursuant to the Court's payment order of February 4, 2026, the Clerk disbursed approximately $2.1 million of the $7.3 million due to Greenberg Traurig. *Id.* at 3. The motion contends that at the time of Greenberg Traurig's request for that payment order, Greenberg Traurig represented EMC but "had no engagement agreement authorizing it to represent DS1 in connection with the restitution motion," and that DS1 never authorized Greenberg Traurig to request that restitution be directed to EMC. *Id.* The motion further states that in October 2024, EMC, represented by Greenberg Traurig, sued DS1's corporate parent as well as Ms. Jacobs. *Id.* at 6. The New York lawsuit seeks the return of funds that EMC invested that were ultimately lost to Ethos. *Id.* The motion contends that in October 2025, Greenberg Traurig wrote to counsel for Ms. Jacobs, proposing that EMC accept restitution on behalf of DS1 and remit the funds to EMC. *Id.* Ms. Jacobs's attorneys never responded or agreed, but nonetheless, Greenberg Traurig thereafter filed its payment motion representing itself as counsel for both DS1 and EMC. *Id.* at 6–8. DS1 states that Ms. Jacobs first learned of the Court's payment order only after the disbursement had already been made. *Id.* at 9.

DS1 asks the Court to vacate its February 4, 2026 order; to direct Greenberg Traurig or EMC to return any and all restitution funds received to the Clerk of Court; to direct the Clerk to disburse those funds to DS1; and to preserve the rights of DS1—and not Greenberg

Traurig or EMC—to any future pro rata distribution of restitution in this case. *Id.* at 17. DS1 contends that this Court should vacate its prior order because that order was premised on Greenberg Traurig's material misrepresentations. *Id.* at 12. DS1 also contends that the Court's February 4, 2026 payment order was unlawful because it substituted a new payee beyond the authorization of the Mandatory Victims Restitution Act. *Id.*

In response, Greenberg Traurig and EMC contend that Greenberg Traurig was duly authorized to act as DS1's attorney at the time of payment motion and the Court's February 4, 2026 order. ECF No. 203 at 1. They further contend that there is no meaningful dispute that EMC contributed the funds that were lost, and that EMC is ultimately entitled to those funds. *Id.* at 2. They also assert that the Court's payment order, which did not amend the judgment but rather directed the logistics of an already-ordered restitution payment, was within the Court's authority. *Id.*

The United States does not take a position on whether the motion to vacate should be granted, but notes that the Court would have inherent power to vacate its own prior order upon proof of material misrepresentations. ECF No. 202 at 5. The United States takes the position that the Court's February 4, 2026 payment order "merely affected the mechanics of payment" and was not beyond the Court's authority. *Id.* The United States also notes, as a factual matter, that "[s]ince Defendant's November 2023 arrest, Greenberg Traurig … has been the government's primary point of contact for DS1." *Id.* at 1.

## II. DISCUSSION

A federal court has inherent power "to vacate its own judgment upon proof that a fraud has been perpetrated upon the court." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 44 (1991). "Not all fraud is fraud on the court." *United States v. Estate of Stonehill*, 660 F.3d 415, 444 (9th Cir. 2011) (quoting *In re Levander*, 180 F.3d 1114, 1119 (9th Cir. 1999)). Fraud on the court "embrace[s] only that species of fraud which does or attempts to, defile the court itself, or is a fraud perpetrated by officers of the court so that the judicial machinery can not perform in the usual manner its impartial task of adjudging cases that are presented for adjudication." *Est. of Stonehill*, 660 F.3d at 444 (quoting *In re*

*Intermagnetics Am., Inc.*, 926 F.2d 912, 916 (9th Cir. 1991)).[1] A party alleging fraud on the court must establish that fraud by clear and convincing evidence. *Id.* at 443.

DS1 does not dispute that Greenberg Traurig was previously DS1's counsel. In March 2024, DS1 confirmed that Greenberg Traurig would represent DS1 in dealing with the Government investigation pertaining to Ethos. *See* ECF No. 195-6 (email of March 20, 2024 from Jonathan Jacobs to Greenberg Traurig, stating, "[a]s discussed, please reach out to the below investigator to confirm your firm represents Delphi Studios 1 LLC in connection with their investigation"). In representing DS1 in connection with the government investigation, Greenberg Traurig submitted to the government on February 20, 2025 a corporate victim impact statement on behalf of DS1.[2] *See* ECF No. 189, Ex. A. This in turn resulted in the government's request for restitution for DS1, and the Court's subsequent judgment ordering restitution for DS1. The United States affirms that "[s]ince Defendant's November 2023 arrest, Greenberg Traurig … has been the government's primary point of contact for DS1." ECF No. 202 at 1. DS1 does not identify when this representation terminated.

DS1 argues that the question is not whether Greenberg Traurig's representation of DS1 was terminated prior to the Court's February 4, 2026 payment order, but rather the "scope" of that representation. ECF No. 205 at 5. DS1 does not disavow Greenberg Traurig's efforts to pursue and obtain a restitution judgment in favor of DS1, and it appears

---

[1] After citing *Chambers*, *Estate of Stonehill*, and *Hazel-Atlas Glass Co. v. Hartford-Empire Co.*, 322 U.S. 238, 246 (1944), DS1 writes, "[t]hese authorities make it clear that vacatur is appropriate not only for intentional fraud but also for material misrepresentations about a moving party's authority or identity, regardless of subjective intent." ECF No. 195 at 12. The Court does not read these authorities as advancing such a broad proposition. Additionally, the quotation that DS1 ascribes to the Supreme Court's decision in *Hazel-Atlas*, that "a court of equity is, as it has always been, free to set aside its own judgment" obtained through misrepresentation, *see* ECF No, 195 at 11, does not appear in that opinion.

[2] The record also contains a second victim impact statement from Andrea Jacobs as manager for DS1, dated March 26, 2025. ECF No. 203-2, Ex. 9.

that those efforts were properly within the scope of the representation; DS1's principal, Ms. Jacobs, worked with Greenberg Traurig and the United States to pursue this restitution. *See* ECF No. 203-1 ¶¶ 12, 14. DS1 contends, however, "[f]iling a contested, dispositional motion nearly two years [after engagement] to hand DS1's restitution to an adverse party did not" fall within the scope of the engagement. ECF No. 205 at 5. In other words, regardless of what precisely was within the scope of the engagement by DS1, Greenberg Traurig's payment motion was decidedly not.

It is not difficult to grasp the basis for discontent set forth in DS1's motion to vacate. Greenberg Traurig, as counsel for both DS1 and EMC, filed its payment motion effectively seeking to obtain payment of DS1's restitution to EMC. At the time the law firm was representing DS1 and EMC in this district, it was simultaneously representing EMC in a lawsuit in New York state court against DS1's parent and (in her personal capacity) DS1's representative Ms. Jacobs, requesting to be made whole for the lost funds. This "dual role" served by Greenberg Traurig appears to have existed since 2024, with Ms. Jacobs presumably aware of this duality.[3] Even so, it appears that in October 2025, Greenberg Traurig asked certain individuals—attorneys in the pending New York litigation, and Jonathan Jacobs, the same representative of DS1 who had engaged Greenberg Traurig in March 2024—to agree that Greenberg Traurig could obtain the restitution funds and remit them to EMC. *See* ECF No. 195-7 at 2. Greenberg Traurig apparently received no response but made its payment motion anyway. The record before the Court does not reflect that, at

---

[3] In March 2024, DS1 confirmed in writing its engagement of Greenberg Traurig. *See* ECF No. 195-6. In October 2024, Greenberg Traurig brought the New York action, and amended its complaint in January 2025. *See* ECF No. 195 at 6 & Ex. 8. In early February 2025, Greenberg Traurig was copied on victim correspondence sent from the prosecution to Ms. Jacobs. *See* ECF No. 203-2 at 271–72. Later that month, Greenberg Traurig filed a victim impact statement on behalf of DS1. *See* ECF No. 189-1, Ex. A. In March 2025, Ms. Jacobs submitted a second victim impact statement on behalf of DS1. *See* ECF No. 203-2 at 271–74.

any time before the payment motion was granted and the funds disbursed, DS1 had formally terminated Greenberg Traurig's representation.

Whether Greenberg Traurig's filing of its payment motion on January 21, 2026 and its subsequent handling of the proceeds were consistent with its fiduciary and other professional duties to its client DS1, the Court determines that at the time of the payment motion, Greenberg Traurig remained DS1's counsel. Greenberg Traurig had been engaged to represent DS1 in connection with the government investigation in this criminal case, and the scope of that engagement encompassed Greenberg Traurig's representation in connection with restitution. The Court concludes that DS1 has not established, by clear and convincing evidence, that Greenberg Traurig perpetrated fraud on the court by representing itself as counsel for DS1 in making the payment motion.

The Court declines to vacate its February 4, 2026 payment order for fraud on the court. In declining to exercise its equitable powers, the Court also notes that there does not seem to be a meaningful dispute that EMC—and not DS1—was the source of the funds at issue, suffered the loss of those funds, and is ultimately entitled to recover those funds. DS1's motion to vacate does not appear to argue otherwise. Although DS1 argues that the funds should be returned to the Court and then re-paid to DS1 as the victim named in the judgment, DS1's motion also states that "DS1 is not asking this Court to resolve the parties' broader dispute over ownership of the funds." ECF No. 195 at 4. DS1 continues, "EMC contends in a pending New York action that it has contractual or equitable rights to money that ultimately became DS1's restitution award. That controversy belongs in the New York court, where it is already being litigated." *Id.*

In opposing the motion, EMC submits evidence that it was the source of the funds, and argues that in the New York action Ms. Jacobs has conceded EMC's right to those funds. ECF No. 203 at 8–9, 19–20.

//

//

//

After EMC filed its opposition, the Court entered a minute order inviting DS1 to respond to these points in its reply brief:

> DS1 may file a reply in support of its motion to vacate (ECF 195 ) no later than 7/20/26. If DS1 chooses to file a reply, the Court requests that the reply address, among EMC's other arguments as DS1 sees fit, EMC's statement that "to date, no party at any point in the New York Action has challenged EMC Presents' entitlement to the Funds recovered here as between EMC and DS1 (or even as between EMC Presents and Andrea Jacobs). In fact, it was not until receipt of Epstein's April 2 letter than EMC Presents learned that any dispute existed." (ECF 203 at 20) DS1's motion appears to indicate that the right to the restitution funds at issue is already being litigated in the New York Action. (ECF 195 at 4)

ECF No. 204.

In its reply, DS1 does not factually dispute EMC's statement, but instead argues that "EMC's observation misses the point," because DS1 is not a party to the New York action. ECF No. 205 at 8. DS1 writes, "DS1 did not suggest—and does not suggest—that the New York court will resolve entitlement to the restitution as between EMC and DS1. No court is resolving that question, because EMC has never put it to DS1." *Id.* DS1 further responds that "there was no dispute over these funds until Greenberg created one by filing the January 2026 motion." *Id.* DS1's reply reiterates that "DS1 does not ask this Court to decide who ultimately owns the money," but "asks only that the Court undo the unauthorized diversion so the restitution reaches the victim the Judgment names." *Id.* at 9. In short, in the face of EMC's contention that it was the party truly harmed by the Ethos fraud, DS1's principal response is that DS1 should prevail because it is the party formally named in the restitution judgment. On the record presented, equitable considerations of providing compensation to the injured party also weigh against ordering EMC to return the funds to the Court for payment to DS1.

The Court disagrees with DS1's contention that the February 4, 2026 payment order was beyond the authority of the Court. The Ninth Circuit has explained that "[t]he process of deciding where to send restitution payments already ordered is distinct from the

authority to order restitution in the first instance," and has stated, "[w]e do not view the redirection of restitution as violating the rule that a district court cannot order restitution absent explicit statutory authority." *United States v. Hankins*, 858 F.3d 1273, 1280–81 (9th Cir. 2017). The payment order in this case, issued at the request of DS1's attorneys without objection from the United States or any other party, directed that the funds be paid to those same attorneys as counsel for co-movant EMC, based on counsel's still-unrebutted representation that EMC was the party truly injured by the fraud. Whether those attorneys were appropriately fulfilling their duties to DS1 in making such a motion, the Court's payment order "ma[de] practical sense within the spirit and confines of the MVRA." *Id.* at 1278.

For the reasons stated above, the Court declines to order EMC to return to the Court the approximately $2.1 million it has received in restitution. However, DS1's restitution judgment is for $7.3 million, and the possibility of future restitution payments remains. DS1's motion to vacate requests that any future restitution payments be made to DS1 and *not* to Greenberg Traurig or EMC. ECF No. 195 at 17. Just as the Court had authority to issue the payment order, the Court has the authority to prospectively modify that order.

The Court will do so. Although the Court issued the February 4, 2026 payment order upon motion of Greenberg Traurig made on behalf of DS1 and EMC, it is clear that that firm no longer represents DS1, and that DS1 does not wish the payment order to apply to future payments. The Court therefore directs that any future restitution payments to DS1 pursuant to the judgment be made to Snell & Wilmer LLP or such other address as DS1 shall direct.

## III. CONCLUSION

For the foregoing reasons, the motion of non-party Delphi Studios 1, LLC [ECF No. 195] is **GRANTED IN PART** and **DENIED IN PART**. The Court's February 4, 2026 payment order [ECF No. 192] shall not apply to future restitution payments due to DS1, which shall instead be made to DS1 through Snell & Wilmer LLP, 3611 Valley Centre

Drive, Suite 500, San Diego, California 92130, or at such other address as DS1 shall provide to the Clerk of Court.

**IT IS SO ORDERED.**

Dated: August 3, 2026



Hon. Robert S. Huie
United States District Judge